■ CITY OF NEW YORK, Appellant, v 130/40 ESSEX STREET DEVELOPMENT CORP., Respondent, et al., Respondents. [756 NYS2d 23] —Order, Appellate Term of the Supreme Court, First Judicial Department, entered on or about May 9, 2001, which reversed an order of the Civil Court, New York County (Milton Tingling, J.), entered on or about May 17, 2000, and granted tenant respondent's motion to vacate a stipulated judgment of possession (inaccurately characterized as a default judgment) and a warrant of eviction, unanimously reversed, on the law, without costs, the motion denied, and the judgment of possession and warrant of eviction reinstated.

In February 1998, petitioner (the City), as landlord, and respondent 130/40 Essex Street Development Corp. (Essex), as tenant, entered into a 20-year lease for a commercial building at 130-40 Essex Street, on the Lower East Side of Manhattan. The City commenced this summary nonpayment proceeding against Essex in October 1999, after Essex failed to cure its arrears in rent, notwithstanding an extension of time the City had granted it. On November 8, 1999, the parties entered into a so-ordered stipulation of settlement (the Stipulation). Under the Stipulation, Essex consented to the entry against it of a judgment of possession and a money judgment for rental arrears in the amount of $37,381.64, and to the issuance of a warrant of eviction "forthwith," with execution of the warrant to be stayed on the condition that Essex pay the amount of the judgment in 12 installments from November 1999 through November 2000. Timely compliance with this payment schedule was to be "in addition to [Essex's] obligation to pay monthly base rent on the first day of each month." The City, for its part, waived its contractual entitlement to attorneys' fees, late fees and interest. The Stipulation further provided that, in the event Essex defaulted in complying with any of its terms, the City would be entitled to execute the warrant of eviction upon service of a five-day notice of default.

The first installment payment required by the Stipulation, in the amount of $15,000, was due on November 25, 1999. Essex tendered a check in that amount to the City on November 30, 1999, but that check was rejected by the bank with the explanation that the account on which it was drawn had been closed. Thereafter, Essex failed to make the second payment under the Stipulation, and also failed to timely pay the December 1999 base rent. On December 15, 1999, the City served a five-day notice of default, and a warrant of eviction was issued on or about January 11, 2000. On January 13, 2000, Essex's attorney persuaded the City to delay executing the warrant by

promising to tender a third party's check for $46,770.80 by the close of business that day, which would have represented full payment of the stipulated judgment and all subsequent rental arrears up to that time. However, not only did Essex's attorney fail to keep his promise to deliver such a check, he did not return subsequent telephone calls from the City's attorney.

On February 23, 2000, Essex moved by order to show cause to vacate and set aside the stipulated judgment of possession and warrant of eviction, representing that it had lined up a third party to pay the amounts owed the City. The motion was not, however, accompanied by any tender of money. On March 3, 2000, Civil Court, after hearing oral argument, denied the motion and vacated all previously granted stays.

On March 10, 2000, one week after the denial of its February 2000 motion, Essex again moved by order to show cause for essentially the same relief. In support of the second motion, Essex submitted a certified check in the amount of $56,109.96, which had been obtained with funds provided by a third party, in payment of the stipulated judgment and all subsequent rental arrears as of that date. Essex requested that the certified check be held in escrow by the clerk pending determination of the motion. The City opposed the motion, arguing that Essex had not shown good cause to avoid the terms of the Stipulation. Civil Court denied the motion, but, on Essex's appeal, Appellate Term reversed, granted the motion, and purported to exercise its discretion to vacate the stipulated judgment of possession and warrant of eviction. We now reverse.

In relieving Essex of the terms of the Stipulation into which it had entered freely, knowingly and with the advice of counsel, Appellate Term ran afoul of the long-established principle that "[s]tipulations of settlement are favored by the courts and not lightly cast aside" (*Hallock v State of New York*, 64 NY2d 224, 230). As the Court of Appeals observed in *Hallock*, strict enforcement of stipulations binding under CPLR 2104, as was the one in this case, "not only serves the interest of efficient dispute resolution but also is essential to the management of court calendars and integrity of the litigation process. Only where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident, will a party be relieved from the consequences of a stipulation made during litigation." (*Id.* [citations omitted]; *see also Mill Rock Plaza Assoc. v Lively*, 224 AD2d 301.)

There is no dispute that the Stipulation entitled the City to a judgment of possession; that Essex defaulted on its payment

obligations under the Stipulation and the lease; and that, based on such default, the Stipulation entitled the City to execution of the warrant of eviction that was issued in January 2000. Nor does Essex contend that the Stipulation is tainted by fraud, mutual mistake, or any other basis for voiding a contract. Nonetheless, Appellate Term vacated the judgment of possession and the warrant of eviction, based on the tardy tender of payment that accompanied the motion Essex made on March 10, 2000, more than three months after Essex first defaulted on the Stipulation by failing to make the first payment due thereunder on November 25, 1999.

Under the undisputed facts of this case, good cause for vacating a warrant of eviction (*see* RPAPL 749 [3]), especially one issued pursuant to a so-ordered stipulation, was absent as a matter of law. Essex offers no valid excuse for its failure to tender installment payments due under the Stipulation, as well as accruing rent, for more than three months. As Civil Court correctly observed, lack of funds did not excuse Essex's failure to make timely payments under its commercial lease and the Stipulation. Further, under the circumstances of this case, Appellate Term inappropriately allowed its concern to avoid a forfeiture of Essex's alleged expenditures for leasehold improvements to override the City's contractual right to timely payments under the lease and the Stipulation. With regard to the stipulated judgment of possession, Essex does not satisfy the requirements for relief from such judgment under CPLR 5015 (a). We note that, contrary to Appellate Term's characterization of the judgment of possession as a "default judgment," that judgment was rendered on consent, not on default.

We reject Essex's argument that it would be inequitable to allow the City to evict Essex on the ground that the City is purportedly to blame for Essex's failure to obtain funds to cure its default until March 10, 2000. Essex asserts that a third-party organization had been prepared to provide the funds in January 2000 as part of a deal to acquire a minority interest in Essex and to sublease part of the subject building. That third party allegedly declined to proceed with the deal when the City stated, on or about January 13, 2000, that it would not consent to a sublease, only to an assignment of the lease under which the assignee agreed to pay market rent, rather than the below-market rent provided by the lease for the first 10 years. Assuming the truth of these allegations, the City's conduct was entirely proper. Essex had already been in default for months prior to January 2000, and it was a condition to Essex's right to assign or sublet under the lease that it not be in default.

The City cannot be faulted for insisting on its contractual rights under the lease, notwithstanding that its stance may have incidentally frustrated Essex's efforts to persuade a third party to cure its defaults.

In view of the foregoing, we need not reach the City's remaining arguments. Concur—Tom, J.P., Rosenberger, Friedman and Gonzalez, JJ.