OPINION OF THE COURT
Per Curiam.
Orders entered on or about May 16, 2003 and August 1, 2003 reversed, without costs, and warrant of eviction vacated.
Upon our review of the record developed at the compliance hearing held below, we conclude that the petitioner landlord failed to establish that the rent-stabilized tenant substantially breached the provisions of the parties’ October 30, 2002 “so-ordered” stipulation of settlement, which, in general terms, prohibited tenant from “engaging] in any behavior” specified in the June 1, 2001 notice of termination underlying this nuisance holdover proceeding.*' The hearing evidence established little more than that tenant—a jazz musician of some renown— threatened to “arrest” a fellow tenant and argued with a management employee (Ramos) and either pointed a finger at Ramos or “punched” Ramos in the chest “with his finger” during a single, short-lived incident in the building lobby on January 15, 2003. The conduct depicted in the record, apparently reflective of psychological difficulties then experienced by the tenant, was not shown to have materially jeopardized anyone’s safety, especially considering that tenant undisputedly returned to the premises and passed through the lobby without incident and without “speak[ing] a word” to Ramos later that same evening. Since whatever physical contact tenant may have had with Ramos involved at most, and according to Ramos’ own testimony, the poking of a finger in Ramos’ chest, we find no record support for the hearing court’s stated determination that tenant “attacked” Ramos and find overstated Ramos’ description and our dissenting colleague’s characterization of the physical contact as a “punch,” a term defined as “a blow with the fist” (American Heritage Dictionary of the English Language [4th ed 2000]). It is significant to note that the only evidence *32 tending to indicate that tenant ever touched Ramos was Ramos’ own account of the incident which, as indicated, equated the one-fingered poke attributed to the tenant with a “punch.” The landlord’s remaining witness, the building occupant whom tenant threatened to arrest, gave no indication that tenant touched Ramos much less “attacked” him, stating only that tenant pointed a finger “right in [Ramos’] face,” an account compatible with tenant’s own testimony that he pointed his finger at Ramos but did not touch him. It also bears mention that, despite the summoning of police and the tenant’s temporary removal to a psychiatric hospital, no criminal charges were filed against tenant in connection with the incident.
In measuring the tenant’s isolated lapse against the harsh result which would obtain upon literal enforcement of the parties’ settlement stipulation, we may properly consider the tenant’s unrefuted hearing testimony concerning the improvement in his mental health occasioned by a postincident modification of his treatment program, an improvement seemingly borne out by the absence of any indication that tenant engaged in further objectionable conduct during the stipulation’s (now expired) two-year probationary period or, for that matter, during the period of the stay granted by this court. While we do not condone or excuse the tenant’s conduct during the January 2003 incident, we conclude, on balance, that a forfeiture of the regulated tenancy of over 20 years’ duration is too harsh a penalty in the particular circumstances of this case and in the absence of the “high threshold of proof . . . required for eviction” (Domen Holding Co. v Aranovich, 1 NY3d 117, 124 [2003]).

 The termination notice had alleged several classes of objectionable behavior on the tenant’s part, including “threatening” building staff and occupants, “continuous[ly] . . . wandering the hallways of the premises,” and causing excessive noise inside his apartment.