■ HOTEL CAMERON, INC., Appellant, v JOHN PURCELL, Respondent, et al., Respondent. [827 NYS2d 13]—

Order of the Appellate Term of the Supreme Court, First Department, entered July 11, 2005, which reversed orders of the Civil Court, New York County (Peter M. Wendt, J.H.C.), entered on or about May 16 and August 1, 2003, denying respondent tenant's motions to stay execution of a warrant of eviction, and which vacated the warrant, unanimously reversed, on the law and facts, without costs, the motions denied and the warrant reinstated.

By notice of petition and petition dated July 2, 2001, landlord commenced a nuisance holdover proceeding against tenant. The notice to terminate annexed to the petition alleged, among other things, that tenant had, on multiple occasions, threatened other tenants and employees of landlord. Tenant, represented by private counsel, served an answer containing numerous affirmative defenses and counterclaims. Following the joinder of issue and tenant's hospitalization for a mental illness, Civil Court appointed a guardian ad litem for tenant to protect his interests.

The nuisance holdover proceeding was ultimately resolved by a stipulation of settlement executed by the attorneys for both parties, an agent of landlord, the tenant and his guardian ad litem. The stipulation provided for a judgment of possession in favor of landlord and a warrant of eviction with execution of the warrant stayed for a two-year period. The stay was conditioned on tenant's compliance with certain terms, including that tenant "not . . . engage in any behavior [alleged] in the notice of termination annexed to the petition." In the event tenant complied with the stipulation for the two-year period, the judgment and warrant would be deemed vacated and the proceeding dismissed with prejudice. On the other hand, if tenant failed to comply with any of the terms in the stipulation, landlord had the right to evict tenant upon five days' notice.

By notice of default dated January 16, 2003, landlord sought to execute on the warrant, claiming that tenant breached the stipulation by engaging in conduct that had been alleged in the notice of termination annexed to the nuisance holdover petition. Specifically, landlord claimed that tenant threatened a doorman employed by landlord and a commercial tenant. Tenant moved to vacate the notice of default and stay execution of the warrant.

Civil Court conducted a hearing on the motions, a hearing that occurred in tenant's absence due to his hospitalization for mental illness. At the hearing, the doorman testified that on the evening of January 15, 2003, tenant approached him while he was sitting at his desk. According to the doorman, tenant insinuated that the doorman had been in tenant's apartment and that tenant would kill him if he went into the apartment again. The doorman testified that tenant "punched [the doorman's] chest with his finger . . . about 2 [or] 3 times," and also threatened the commercial tenant, who happened to enter the lobby as the incident was unfolding. This testimony was corroborated by the commercial tenant, who testified that she saw tenant pointing a finger in the doorman's face, stating that he was going to come and "get" the doorman and otherwise threatening him. In addition, tenant threatened in an ugly manner to "get" her, too.

By decision and order dated May 16, 2003, Civil Court found that tenant breached the stipulation and declined to stay execution of the warrant. Tenant subsequently moved, among other things, to reopen the hearing to permit him to testify. Civil Court granted that aspect of the motion. At the reopened hearing, tenant testified that he started the confrontation with the doorman and that he pointed his finger at the doorman, but he denied touching or threatening the doorman. Additionally, ten-

ant denied threatening the commercial tenant. By decision and order dated August 1, 2003, Civil Court, crediting the testimony of the doorman and the commercial tenant over that of tenant, denied that aspect of the motion which sought a stay of execution of the warrant.

The majority at Appellate Term reversed the orders of Civil Court denying tenant's motions to stay execution of the warrant. The majority tacitly acknowledged that tenant breached the stipulation but found that the breach was not substantial. The dissent, noting that Civil Court's determination that tenant breached the stipulation was supported by a fair interpretation of the evidence and rested in large measure on an assessment of the witnesses' credibility, concluded that Civil Court correctly denied tenant's motions. Appellate Term granted landlord's motion for leave to appeal to this Court, and we reverse.

"Stipulations of settlement are favored by the courts and not lightly cast aside" (*Hallock v State of New York*, 64 NY2d 224, 230 [1984]). Strict enforcement of stipulations of settlement serve the interest of efficient dispute resolution, and is essential to the management of court calenders and the integrity of the litigation process (*id.*; *see Mitchell v New York Hosp.*, 61 NY2d 208 [1984]; *City of New York v 130/40 Essex St. Dev. Corp.*, 302 AD2d 292 [2003]).

As the dissenting justice at Appellate Term correctly observed, Civil Court's determination that tenant breached the stipulation rested upon a fair interpretation of the evidence, and that finding should not have been disturbed by Appellate Term (*see Horsford v Bacott*, 32 AD3d 310 [2006], *lv granted* 2006 NY Slip Op 77539[U], 2006 App Div LEXIS 12344 [2006]; *RHM Estates v Hampshire*, 18 AD3d 326 [2005]; *300 E. 34th St. Co. v Habeeb*, 248 AD2d 50 [1997]). Moreover, Appellate Term erred in reversing the orders of Civil Court on the basis that the breach was insufficiently substantial. Stipulations of settlement are essentially contracts and subject to principles of contract construction (*Aivaliotis v Continental Broker-Dealer Corp.*, 30 AD3d 446, 447 [2006]; *Sharp v Stavisky*, 221 AD2d 216, 217 [1995], *lv dismissed* 87 NY2d 968 [1996]), including the tenet that a substantial forfeiture occasioned by a trivial or technical breach (i.e., a nonsubstantial breach) is disfavored (*see Fifty States Mgt. Corp. v Pioneer Auto Parks*, 46 NY2d 573, 576-577 [1979]). A fair interpretation of the evidence, however, supports the conclusion that the breach was substantial. Additionally, the loss of possession of the premises is not a forfeiture. Rather, "[i]t is merely the contracted-for consequence of . . . tenant['s]

own failure to do that which [he] promised to do" (*1029 Sixth v Riniv Corp.*, 9 AD3d 142, 150 [2004], *appeals dismissed* 4 NY3d 795 [2005]).

Finally, while the court, in certain circumstances, has discretion not to enforce a stipulation (*see Siltan v City of New York*, 300 AD2d 298 [2002] [court has discretion to refuse to enforce a stipulation where there is evidence of fraud, overreaching, unconscionability, or illegality]; *Matter of Martinez v Jacobson*, 253 AD2d 521 [1998] [same]), such discretion would not be providently exercised in this case. The stipulation was the product of negotiations between the attorneys for both parties, an agent of landlord, tenant and his guardian, and permitted tenant to avoid adjudication of landlord's nuisance holdover petition and remain in possession of his apartment if tenant refrained from certain specified conduct for a two-year period. Given the circumstances under which the stipulation was executed and the provisions advantageous to tenant therein, equity would not be served by refusing to enforce the stipulation. Additionally, we would discourage landlords from resolving housing court matters through stipulations of settlement if we were not to enforce this stipulation. Concur—Tom, J.P., Andrias, Marlow, McGuire and Malone, JJ. [*See* 9 Misc 3d 30 (2005).]