OPINION OF THE COURT
Sabrina B. Kraus, J.
Background
This summary holdover proceeding was commenced by Arthur Management Co. seeking to recover possession of apartment 2F at 901 Avenue H, Brooklyn, New York 11230 based on allegations that Arthur Zuck, the rent-controlled tenant of record, was committing a nuisance at the subject premises. Procedural History
The proceeding was originally returnable on February 13, 2007, and the court made a referral to Adult Protective Services (APS) on behalf of respondent, and adjourned the proceeding to March 6, 2007. On February 21, 2007, APS notified the court that it had accepted the referral, and that respondent was eligible for protective services.
On March 6, 2007, the court issued an order adjourning the proceeding, over petitioner’s objection. The purpose of the adjournment was to afford APS the opportunity to complete its psychiatric evaluation, which the court ordered completed on an expedited basis.
On March 20, 2007, the court issued an order based on “the court’s own observations” that respondent was a person incapable of adequately protecting his rights in this proceeding, and thus in need of a guardian ad litem (GAL). The proceeding was adjourned to April 17, 2007 for a GAL to appear.
On April 17, 2007, the court issued an order appointing Mark Fertig,[1] as GAL for respondent in this proceeding, and adjourning the proceeding to May 7, 2007 for trial. On May 7, 2007 the court granted respondent an adjournment of the trial “to allow *262 the GAL to prepare for trial of this matter and also to take appropriate steps to protect the ward.”
On May 30, 2007, the parties appeared ready to proceed to trial. On said date respondent was in court, as was the GAL, and two of respondent’s friends. At the final conference, prior to being transferred to Part X, the parties advised a settlement could not be reached, because petitioner would not consent to a probationary stipulation. The parties further advised that respondent had already rejected a buyout offer of $15,000.
However, later that afternoon, the parties did reach a settlement, and the proceeding was referred back to Part H for allocution and approval of the stipulation by the court. The court allocated the stipulation on the record. The stipulation provided that respondent was to surrender the premises by August 31, 2007 in exchange for a buyout in the amount of $11,640 upon surrender and a waiver of the rent arrears.[2] The stipulation further provided respondent would remain liable for use and occupancy, at a rate of $655 per month, for the period of June 2007 through August 2007, and that said sum would be deducted from the payment due by petitioner upon surrender.
On or about August 9, 2007, a Mental Hygiene Law article 81 proceeding was commenced by the Commissioner of Social Services. In said proceeding, Judge Tomei issued an interim order and judgment appointing the Jewish Association for Services for the Aged (JASA) as limited guardian for respondent. The powers awarded to JASA as article 81 guardian were to defend or maintain any civil judicial proceeding on behalf of respondent, including but not limited to the instant proceeding. The order further provided that, if this proceeding could not be resolved, JASA was authorized to seek alternative housing in the community and relocate respondent, upon prior written notice to the article 81 court.
On or about December 2007, JASA moved by order to show cause for an order vacating the underlying stipulation of settlement in this proceeding and related relief. The motion has been fully briefed by both parties and was submitted for this court’s consideration on January 4, 2008.[3]
*263 Motion
JASA moves to set aside the stipulation on the grounds that respondent was suffering from impaired judgment and extreme duress at the time he entered into the stipulation. JASA argues respondent did not understand the ramifications of the stipulation. Furthermore, JASA alleges that respondent would be able to successfully defend against the allegations in this proceeding, if given an opportunity to defend on the merits.
Petitioner argues in opposition that the stipulation is a binding court order, which was approved by the court, after a lengthy allocution, and that there is no basis in fact or law to vacate the stipulation.
Under the circumstances presented herein, this court agrees, and finds that the stipulation of settlement entered herein is valid and binding.
It is well established that “ [stipulations of settlement are favored by the courts and not lightly cast aside.” (Hallock v State of New York, 64 NY2d 224, 230 [1984].) Strict enforcement of stipulations is also essential to the integrity of the litigation process and efficient dispute resolution. (Hotel Cameron, Inc. v Purcell, 35 AD3d 153 [1st Dept 2006].) A failure to enforce a stipulation by the courts, even in cases where a GAL has been appointed for respondent, would “discourage landlords from resolving housing court matters through stipulations” (id. at 156).
However, there is authority to vacate a stipulation of settlement where it appears that a party has “inadvertently, unadvisably or improvidently entered into an agreement which will take the case out of the due and ordinary course of proceeding in the action, and . . . work[s] to his prejudice.” (Matter of Frutiger, 29 NY2d 143, 150 [1971].)
Such a determination is made on a case-by-case basis, and is based on the facts and circumstances surrounding the execution of a stipulation. For example, in Cabbad v Melendez (81 AD2d 626 [2d Dept 1981]) the Appellate Division held there was good cause to vacate a stipulation where a non-English-speaking tenant, in absence of counsel, entered into a stipulation which awarded landlord possession. In its decision, the Court noted that the tenant had mistakenly understood that she would be *264 allowed to remain a tenant upon payment of the arrears due. The Court also noted the likelihood of the tenant prevailing at trial, based on the rent-regulated status of the subject premises.
Similarly, in BML Realty Group v Samuels (15 MisC 3d 30 [App Term, 1st Dept 2007]), the court held that good cause to vacate a stipulation existed where the tenant was 69 years old, mentally ill and blind. The GAL entered a stipulation agreeing to a judgment of possession and a 30-day stay on the execution of the warrant. The court’s decision noted that the GAL entered into the stipulation within two weeks of being appointed, and had never met with the tenant or visited the subject premises.
In housing court, responsibility for approval of any final resolution of the proceeding rests not with the GAL but with the judge who presides over the proceeding. (See e.g. Fern Fisher, Administrative Judge, Civ Ct of City of NY, Advisory Notice, Settlement of GAL Cases [eff Mar. 8, 2007].) The court’s ongoing obligation to supervise the work of the GAL extends in particular to review and approval of any stipulation of settlement resolving the litigation. (See e.g. New York City Hous. Auth. v Jackson, 13 Misc 3d 141[A], 2006 NY Slip Op 52265[U] [App Term, 2d & 11th Jud Dists 2007].)
The Advisory Notice issued by Judge Fisher provides in pertinent part that a housing court judge should insure, prior to approving a stipulation of settlement, that the GAL has at a minimum:
“1. Met with the ward and attempted to make a home visit
“2. Determined what the ward desires as an outcome of the case
“3. Investigated and weighed all factors in the case and is recommending a settlement that is in the best interests of the ward and which also has taken into account the ward’s desires if feasible “4. Developed a plan to assist the ward in obtaining repairs, monies or other assistance needed to comply with the proposed stipulation “5. Taken all steps to follow through with the plan to assist the ward
“6. Informed the court if the ward agrees or disagrees with the proposed settlement
“7. Taken all steps to get the ward to come to court or to locate the ward if the ward is missing.” (Fern *265 Fisher, Administrative Judge, Civ Ct of City of NY, Advisory Notice, Settlement of GAL Cases [eff Mar. 8, 2007], http://nycourts.gov/courts/nyc/housing/ directives/AN/gal.pdf [accessed Mar. 12, 2008], cached at http://www.nycourts.gov/reporter/webdocs/ gal.pdf.)
Other authorities have recommended procedures for a review of proposed settlements in housing court, where a GAL has been appointed for one of the parties.
“[I]f the ward’s property rights are implicated (e.g., if the settlement provides for a warrant or surrender), the court must make an initial determination whether it can approve the settlement. The court should conduct a full inquiry of the litigant and the guardians ad litem concerning the bases for the terms of the settlement and the litigant’s understanding of the settlement. Depending on the level of incapacity of the litigant, the court may decide that the case requires a Supreme Court determination of whether an Article 81 guardian should be appointed before a settlement is approved that relinquishes the litigant’s property rights. If the litigant has a higher level of capacity, the court may determine that the settlement terms are appropriate and approve the settlement as recommended by the guardian ad litem. The responsibility for making what may be a delicate and complex determination, on a case-by-case basis, resides with the court as it exercises its authority to approve settlements.” (Jeanette Zelhof et al., Protecting the Rights of Litigants with Diminished Capacity in the New York City Housing Courts, 3 Cardozo Pub L Pol’y & Ethics J 733, 765 [2006].)
In this proceeding, there is no basis to find that either the GAL or the court failed to follow the guidelines set forth in recommending or approving the stipulation of settlement. The record establishes that the respondent was in court, not only for the execution and allocution of the stipulation of settlement, but also on all court dates over the 31/2-month period between the commencement of the proceeding and the execution of the stipulation. After appointment and appearance of the GAL, the court adjourned the trial of the proceeding expressly for the purpose of allowing the GAL sufficient time to prepare for a trial.
Prior to approving the stipulation of settlement, the court extensively allocuted the terms of the stipulation on the record. *266 During the course of said allocution, the court reviewed the terms of the stipulation with the respondent directly. The court specified that, by entering the stipulation, respondent was waiving his right to have a trial in the proceeding. Respondent asked specific questions regarding the terms of the stipulation. For example, respondent asked about the possibility of an extension of time to vacate and the consequences of same.
Moreover, the court specifically advised respondent that if he had any doubt or hesitation about entering into the stipulation that he could and should reject it. The court stated:
“Mr. Zuck, listen to me. If you have any hesitation or there’s any doubt in your mind that you cannot fulfill the terms of this agreement, then you should not enter into it.
“Because my hands are going to be tied and I’m not going to be able to give you an extension no matter how sorry I feel for you and no matter how pathetic your personal circumstances are.
“The laws are not going to permit me to allow you to remain there. And if for some reason that were to be the case you would forfeit your right to be compensated by the landlord in any manner.”[4]
After this statement, the court offered the respondent the opportunity to accept or reject the proposed stipulation, and respondent agreed that he accepted the proposed terms. Respondent’s Arguments
Applicable Case Law
Respondent’s moving papers rely primarily on two cases, BML Realty Group v Samuels (supra) and New York City Hous. Auth. v Jackson (supra), both of which are distinguishable from the case at bar. In BML Realty, the GAL had never met with the respondent or visited the subject premises, and had no plan regarding relocation of the elderly tenant. In the case at bar, the GAL did meet with respondent and secured sufficient time to prepare for a trial on the merits, and only recommended a settlement which respondent consented to after allocution by the court.
In New York City Hous. Auth. v Jackson (supra), and more recently Adelphi Assoc., LLC v Gardner (18 Misc 3d 132[A], 2008 NY Slip Op 50085[U], *1 [App Term, 2d & 11th Jud Dists *267 2008]), the decisions to vacate the stipulations entered into in those proceedings are based on the “particular circumstances present” in each case. (Id.) In the Jackson case it. appears that the GAL signed the stipulation on behalf of the respondent. Additionally, the majority in Jackson held that the GAL had “inadvisably waived occupant’s arguably meritorious defenses to this proceeding.” (13 Misc 3d 141[A], 2006 NY Slip Op 52265[U], *2 [2006].) These “particular circumstances” are not present in the case at bar.
*268 Indeed, the sole purpose of the initial recommendation by APS to seek an article 81 guardian was to facilitate respondent’s relocation. This is reflected in the psychiatric report of Dr. Mark Wallace, dated April 10, 2007 (exhibit D to JASA’s moving papers).[5]
The moving papers do not indicate in any detail what, if any, steps JASA has taken since its appointment as an article 81 guardian to assist respondent in relocating.
Meritorious Defense to Underlying Proceeding
Moreover, JASA’s argument that respondent could establish a meritorious defense to the allegations in the proceeding at trial is not convincing. The petition contains very specific allegations of disturbing behavior by respondent. The allegations include that respondent repeatedly walked in the common areas of the building in a state of undress and with his genitals and buttocks exposed, urinated in public areas of the building, repeatedly spat and vomited in common areas of the building, and other incidents of antisocial behavior, as well as the creation of unsanitary conditions in the subject premises. Additionally many of these incidents are captured on videotape, leaving little doubt as to petitioner’s ability to establish them at trial.
JASA’s argument that there is no harm or foul in this behavior, because the incidents often take place after midnight, and are not witnessed by any other occupants or residents, does not present a meritorious defense to the proceeding.
Similarly, the argument that behavior constituting a nuisance is excused as involuntary where a respondent is mentally impaired has also been rejected by the courts, as the dispositive issue is the nature of the conduct. (See e.g. 301 E. 69th St. Assoc. v Eskin, 156 Misc 2d 122 [App Term, 1st Dept 1993].) Authority of GAL to Recommend the Proposed Stipulation JASA also argues that the GAL is not authorized to execute agreements on behalf of the respondent pursuant to CPLR 1207. However, JASA’s own papers acknowledge that the GAL has the authority to recommend a resolution to the court and that ultimately it is up to the court to “confirm, modify or reject” the proposed resolution as the court deems appropriate. (Reply affirmation of M. Mitrani, dated Jan. 4, 2008, para 8.) Thus, the argument fails to establish a basis to vacate the stipulation *269 where the GAL recommended a settlement, which the respondent consented to, and which was approved by the court. Conclusion
*267 In Adelphi Assoc., LLC v Gardner (supra), the court noted that the GAL entered into a stipulation which converted a nonpayment proceeding to a holdover proceeding and provided for a surrender of possession of the subject premises in 30 days. The GAL had not met or spoken to the respondents either before or after execution of the stipulation. The court also noted that the GAL serving in that case was relieved from her appointment, not only in that case, but in all proceedings pending at the time. Thus, the threshold set forth by the Court of Appeals in Matter ofFrutiger (29 NY2d at 150), of having “take[n] the case out of the due and ordinary course,” was met under the facts of the Adelphi case, but not in the case at bar. Here, the stipulation settling the proceeding was executed in the due and ordinary course of the litigation.
Finally, 124 MacDougal St. Assoc. v Hurd (NYLJ, Feb. 2, 2000, at 28, col 4 [Civ Ct, NY County, Scheckowitz, J.) is distinguishable from this proceeding, because in Hurd the court vacated a default judgment entered prior to the appointment of a GAL for respondent in the proceeding. Here, the stipulation was on consent of respondent, after the appointment of the GAL, with the GAL’s recommendation and the court’s review and approval. Plans for Relocation
Movant fairly argues that the transcript of the court’s allocution did not explore in detail the plans discussed by respondent and the GAL for relocating. However, the GAL secured funds through a buyout to assist the respondent, and had clearly discussed available options with the respondent prior to entering the stipulation of settlement. One of the primary stated purposes of the article 81 proceeding was to facilitate any necessary relocation. This is evidenced by various documents in the record. For example, Judge Tomei’s order appointing JASA as an article 81 guardian, issued some five months after the instant proceeding was settled, provided that one of the two powers granted to JASA was to seek alternative housing for respondent and relocate him in the community.
*269 In conclusion, based on the foregoing, respondent’s motion is denied and the court finds that the stipulation remains in full force and effect. However, under the circumstances the court extends respondent’s time to surrender possession and comply with the stipulation through and including March 31, 2008, and finds that surrender by said date shall entitle respondent to the agreed upon compensation under the stipulation of settlement, less the agreed upon use and occupancy payments due.
Respondent agreed to pay $655 per month use and occupancy for the period of June 2007 through August 2007. The stipulation further provided that the payments would be deducted from the settlement payment. Therefore, provided respondent vacates the premises, in accordance with the stipulation, by the extended date of March 31, 2008, he shall be entitled to $5,090, which is the difference between the buyout amount ($11,640) and use and occupancy due from June 2007 through March 2008 ($6,550).
Execution of the warrant is thus stayed through March 31, 2008 for respondent to voluntarily vacate the premises. Upon default, a warrant may execute after notification to Adult Protective Services.

. The underlying motion papers evince some confusion by the parties as to whether Mark Fertig is also an attorney admitted to practice law; the court notes that the record reflects that Mr. Fertig is in fact not an attorney.

. The stipulation does not indicate the amount of the arrears to be waived but petitioner’s motion papers allege that the arrears waived totaled $10,211.16.

. For all matters prior to December 2007 in this proceeding, Judge Milin was the presiding Judge in Part H. As of December 2007 when JASA moved *263 for the instant relief, Judge Kraus was the presiding Judge in Part H. Judge Milin exercised her discretion to decline referral of the instant motion, which was then marked submitted to Judge Kraus as of January 4, 2008.

. Taken from the transcript of the allocution on May 30, 2007, annexed as exhibit F to petitioner’s opposition papers.

. Respondent consented to the appointment of the article 81 guardian, thereby precluding the need for a finding by Supreme Court that he was incapacitated as defined by section 81.02 (b) of the Mental Hygiene Law.