210 Livingston St. LLC v Horne (2025 NY Slip Op 50525(U))

[*1]

210 Livingston St. LLC v Horne

2025 NY Slip Op 50525(U)

Decided on April 10, 2025

Civil Court Of The City Of New York, Kings County

Donoghue, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 10, 2025
Civil Court of the City of New York, Kings County

210 Livingston St. LLC, Petitioner-Landlord,

against
Stanley Horne, VALENTINE "DOE", LILY "DOE", Respondents-tenants, 
 JOHN DOE & JANE DOE Respondents

Index No. 318757/23 

 

Elizabeth Donoghue, J.

Petitioner seeks a possessory judgment and issuance of a warrant of eviction based on an alleged default of a one-year probationary stipulation. The Stipulation (hereafter "Stipulation") (NYSCEF No. 5) provided that respondent would refrain from smoking and other behaviors referenced in the predicate notice to cure [FN1]
for the period of October 24, 2023, to October 24, 2024. Upon default, petitioner could move for a judgment of possession and warrant of eviction.
Thereafter petitioner alleged a breach, and the court held a hearing on December 18, 2024, and January 23, 2025, to determine petitioner's application for a judgment and warrant.
Hearing
Petitioner's case:
Petitioner presented its case on December 18, 2024. Petitioner's property manager, Brandon Moore, testified that part of his role as manager is to address complaints from tenants. He introduced Petitioner's P1, a "shift note" of a smoking complaint dated July 5, 2024, at 8:45 pm. The note states that Jose V[argas] confirmed the front of apartment 8A and elevators smell [*2]like cigarettes."
Jose Vargas, an employee working at the reception desk, then testified that he investigated the smoking complaint at apartment 8A. Mr. Vargas went to the front of apartment 8A; he did not enter apartment 8A. He smelled cigarette smoke in front of the door and in the elevator. He found a cigarette on the 8th floor hallway floor. 
Petitioner next called Brook Garrison, a neighbor and tenant of apartment 8J at the subject building. The witness testified that whenever she walks past apartment 8A she smells marijuana or cigarette smoke. Ms. Garrison emailed property manager Brandon Moore, on July 6, 2024 (Petitioner's Exhibit 2) to complain of the smell of cigarette smoke, stale air and humidity. Ms. Garrison also recalled an instance of going with building personnel to apartment 8A because she smelled smoke. Building personnel opened the apartment door, and she smelled smoke. She could not recall the date.
As for respondent's unruly guests, Ms. Garrison testified that she and her 13-year-old daughter do not feel comfortable with respondent's guests in the common areas. She observed 6-8 people leaving the apartment at one time making her unable to keep track of who lives there, and that their behavior feels intimidating. She described the individuals as "sketchy", "hookers" and "drug addicts". She recalled that a person with "orange hair" knocked on Ms. Garrison's door not knowing where she was; the last time someone knocked on the door was in October 2024, but no day was given. Ms. Garrison complained to the building (P2): "the Plethora of [sic] people that are living in 8A is obnoxious. Half the time riding with elevator with them seems scary because they are erratic." She relayed that guests spoke to her daughter which made her daughter feel uncomfortable. Ms. Garrison recently felt accosted by respondent when he told her to stop smelling his door, and he called her a curse word. Some of the interaction occurred in the elevator.
Respondent's case
On January 23, 2025, Respondent established through his testimony that he was not home during the July 4th weekend, July 5-6, 2024, that he was out of the borough at a family function and left his niece at the apartment. The respondent testified that he is not the best tenant, but other people are worse than him. He does not host card games any longer, which had made him financially successful. He does not smoke inside; that other people smoke in the building but that he tries to keep smoking to "non"(smoking). He goes downstairs to smoke a cigarette. He also claims to have shut down the nuisance like behavior of visitors.
Kadeem Cornwall testified for respondent on January 23, 2025. He visited respondent at the subject premises on July 4, 2024, at 9:30-10 am to check in and hang out. Respondent was not there. He contacted respondent by text message at 2 pm and learned that respondent was not home and was going to a family barbecue in Queens.
Motion For a Judgment and Warrant
Petitioner seeks a judgment of possession and issuance of the warrant of eviction based on the breach of the Stipulation. It is well settled that "[s]stipulations of settlement are favored by the courts and not lightly cast aside (Hallock v State of New York, 64 NY2d 224 [1984]) Strict enforcement of stipulations of settlement serve the interest of efficient dispute resolution and is essential to the management of court calendars and the integrity of the litigation process (Id. See Mitchell v New York Hosp., 61 NY2d 208 [1984], City of New York v 130/40 Essex St. Dev. Corp., 302 AD2d 292 [2003]). Hotel Cameron, Inc. v Purcell, 35 AD3d 153 (App Div 1st 2006), St. Margaret's House Hous. Dev. Fund Corp. v Hope, 2010 NY Slip Op 50184(U).
The Stipulation primarily addresses two things. First, smoking. It is undisputed that the building received a smoking complaint for 8A on July 5, 2024, and appropriately investigated the complaint. Mr. Vargas went to the hallway and determined there was a smell of smoke. However, respondent credibly testified that he was away, therefore, he was not the person smoking. Other than the July 5, 2024, incident, the testimony about smoking was vague and unspecific. For example, Ms. Garrison could not recall the date she went to the unit with building personnel and saw smoke; she testified that every time she walks by the apartment, she smells smoke—an uncorroborated claim.
Second, the Stipulation prohibits behavior alleged in the notice to cure, as to unruly guests causing violent commotions. There was no specific testimony of unruly guests causing violent commotions in the building or crowds of individuals in the apartment smoking, drinking and fighting until early morning hours during the probationary period. Respondent calling Ms. Garrison a name and telling her to stop smelling his door, while disturbing, does not rise to the level of a breach of this Stipulation. Respondent's conduct is not as egregious as in Marine Terrace Preservation, LP v Arabadjis, 78 Misc 3d 130[A], 2023 NY Slip Op 50298[U] App Term 2d Dept 2023], where conduct included threats of physical and sexual assault.
It is well-settled that the enforcement of a court ordered stipulation of settlement is "subject to the supervision of the courts and courts may relieve a party from the consequences of strict enforcement so a stipulation when such enforcement would be unjust or inequitable." Dubor Assoc v Richburg, 50 Misc 3d 13, App Term 2d Dept 2015) Based on all of the evidence presented, petitioner failed to prove a violation of the stipulation sufficient to warrant the termination of respondent's tenancy.
Accordingly, it is 
ORDERED, that, petitioner's motion for a judgment of possession and issuance of the warrant is denied;
ORDERED, that the clerk of the court shall mail a copy of this decision to the respondent.
This constitutes the decision and order of the court. 
Dated: April 10, 2025
Bronx, New York

Footnotes

Footnote 1:In addition to smoking, the relevant provisions of the notice to cure (NYSCEF No. 1) Par 7, 10) reference violent commotion and entertaining unruly guests. Par 11 states that respondent had a crowd of twenty (20) individuals smoking, drinking and fighting until almost 6 am."