■ AKRON MEATS, INC., Respondents, v 1418 KITCHENS, INC., Appellant.—Judgment, Supreme Court, New York County (Leonard N. Cohen, J.), entered May 5, 1989, which, after nonjury trial, awarded plaintiff $75,666.71 plus interest, costs, and disbursements, representing payment for premature cancellation of its lease and refund of its security deposit, and dismissed defendant's claims against plaintiff for damage to the premises, is unanimously modified, on the law, to reverse the award of damages to the plaintiff, and is otherwise affirmed, without costs.

Plaintiff Akron Meats, Inc. was the commercial tenant of storefront premises pursuant to a 15½-year lease with defendant's predecessor, for a term commencing July 1, 1977. Article 39 of the lease provided that the landlord or subsequent purchaser of the property had the option to cancel the lease, on six months' notice, in the event of the demolition, sale, or long-term net lease of the building. Upon such a termination, the landlord was to pay to the tenant a sum equal to the unamortized portion of $100,000, based on a 120-month straight amortization commencing January 1, 1983, "provided tenant is not then in default in the performance of any of the terms and conditions of this lease * * * and has surrendered the demised premises on the date fixed in said notice in accordance with the provisions of Article 21 of the lease".

Article 21 is the standard clause requiring tenant to surrender the premises "broom clean, in good order and condition, ordinary wear and tear excepted, and tenant shall remove all its property".

Other provisions of the lease relevant to the instant action include article 3, providing that all alterations and fixtures installed by the tenant became the landlord's property and were to remain on the premises upon surrender, unless the landlord, upon 20 days' notice, relinquished its right, in which

case the tenant was to remove the fixtures at tenant's own expense. "Trade fixtures" installed by the tenant remained the tenant's property, to be removed by the tenant upon surrender, but upon removal the tenant was obligated to repair and restore the premises to the condition existing prior to installation and to *repair any damage to the property due to the removal.* Article 4 required the tenant to take good care of the premises and make all nonstructural repairs. This article additionally required the tenant to repair all damage caused by its negligence in removing fixtures. Article 20 contained, *inter alia,* a standard merger clause and requirement that any modifications be in writing.

In 1985 the defendant, who operated a retail store next door to the plaintiff, purchased the building and timely exercised the option to terminate plaintiff's tenancy pursuant to article 39 of the lease. Plaintiff's principal testified that as the time to vacate the premises neared, the superintendent of the building told him that the landlord wished everything removed. Accordingly, plaintiff, the operator of a butcher shop, arranged for workmen to remove its heavy fixtures, including large refrigeration units, meat counters and shelves, and to dismantle certain plumbing, a dropped ceiling and special lighting fixtures which it had installed. As a result, sizeable holes remained in the floor where the refrigeration drain units had been located and wiring was left exposed. As evidenced by photographs and an engineer's report submitted at trial, the store premises were left in a completely stripped condition and in a general state of disrepair.

By reason of the condition of the premises upon surrender, the landlord withheld the premature cancellation payment due under article 39 of the lease, totaling $71,666.71, and did not refund the tenant's security deposit of $4,000. The tenant commenced this action to recover those sums, and the landlord commenced a separate action seeking damages from the tenant. The two actions were consolidated and tried before the court without a jury. The issue was framed in terms of the tenant's entitlement to the premature cancellation payment unless there was a finding that it had defaulted in performance of any of the terms of the lease.

After nonjury trial, the court held that the tenant had not defaulted. With respect to article 3, it found no violation by the tenant in removing the fixtures because the superintendent had apparent authority to authorize their removal and the landlord, whose principal observed the four-day-long removal process without objection, had acquiesced in the re-

moval of such fixtures and manifested implied consent. The court recognized that the condition of disrepair in which the premises were left raised the possibility of a violation of article 21 which required the premises to be surrendered broom clean. However, the court, taking into consideration the deteriorated condition in which the tenant had received the premises in this old building when it first took occupancy in 1977, concluded that the tenant had complied with article 21 by surrendering the premises in an essentially similar condition. The landlord's damage claim against the tenant, primarily for damage to the floor and basement beams from the heavy refrigeration units, was dismissed on the ground that there was no negligence by plaintiff in the maintenance or installation of these units, and that the damages were primarily due to an improperly installed steel beam in the basement, beyond the control of the tenant.

Upon a review of the record, we find that the court erred in holding that the tenant had not defaulted in the performance of any covenants of the lease. We find, to the contrary, that by removing the fixtures and failing to leave the premises in good repair, the tenant was in violation of the lease and, therefore, was not entitled to the cancellation payment.

Whatever right plaintiff may have had to remove the "trade fixtures" under article 3 of the lease, the terms of that article expressly proscribed it from dismantling the ceiling, paneling, or light fixtures and leaving the electrical wiring and plumbing in a state of disrepair, as was here done. Moreover, under article 4, the plaintiff tenant had the affirmative obligation to repair the damage caused by the removal. Concomitant with its authorization to remove the trade fixtures, such as the refrigeration units and counters, was the tenant's obligations under articles 3 and 4 of the lease to repair the damage caused by such removal, which included sizable holes and exposed wires. The evidence clearly established that the tenant was in default under those articles of the lease.

Nor was the obligation under article 21, to leave the premises broom clean and in good order and repair, met. The excusal of this failure by a finding that the tenant was only required to return the premises in the same condition as when they were received at the inception of the lease cannot be sustained. The express obligation imposed by a lease to leave premises in good condition has long been interpreted to require the tenant not only to keep the premises in as good condition as when it enters, but *to put, keep, and leave the premises in a state of good repair. (E.g., Lehmaier v Jones,* 100

App Div 495; *Black & Yates v A. R. Fuels,* 26 Misc 2d 627.) Here, notwithstanding the age of the building, it was demonstrated, without question, that plaintiff did not leave the premises in good repair. Although plaintiff may have left the premises in no worse condition than when it first took occupancy, it clearly failed to fulfill the specific obligation of article 21 of the lease to leave the premises in "good order and condition".

Accordingly, since the tenant defaulted in the performance of various of its obligations under the lease, it was not entitled to the premature cancellation payment according to the terms of article 39 of the lease, and that part of the judgment awarding it such payment and return of the security deposit is reversed.

That portion of the judgment which dismissed the landlord's claims for money damages is, however, affirmed since the evidence supports the trial court's determination that the plaintiff was not responsible for the cracked beams in the basement and other damage to areas beyond its control. Concur—Sullivan, J. P., Carro, Rosenberger, Ellerin and Smith, JJ.