[777 NYS2d 122]

1029 Sixth, LLC, Appellant, v Riniv Corporation, Respondent, et al., Respondent.

1029 Sixth, LLC, Appellant, v Slip-On Shoes, Inc., Respondent, et al., Respondent.

1029 Sixth, LLC, Appellant, v Corona Grill Corporation et al., Respondents.

1029 Sixth, LLC, Appellant, v Guity Fashion Corporation, Respondent, et al., Respondent.

First Department, May 25, 2004

### APPEARANCES OF COUNSEL

*Jaffe, Segal, Ross & Light LLP*, New York City (*Bill S. Light* and *David F. Segal* of counsel), for appellant.

*Mitchell Merlis*, New York City, for respondents.

### OPINION OF THE COURT

Saxe, J.

In these four companion commercial holdover proceedings, each of which was settled by so-ordered stipulation, the landlord appeals from the orders of Appellate Term which reversed the Civil Court and required the landlord to make payments to respondent tenants pursuant to their stipulations. We agree with the Civil Court's view, and conclude that Appellate Term was wrong in excusing the tenants' failure to comply with the terms of the stipulation and requiring the landlord to comply with the stipulation despite the tenants' default.

### Factual Background

On October 15, 1999, the previous landlord served the respondent commercial tenants with notices of termination, advising that it had conveyed its interest in the building to 1029 Sixth, LLC, which intended to develop the building, and was

therefore exercising its option under lease rider paragraph 9 to terminate the lease as of January 31, 2000. That provision stated that should the landlord intend "to develop, sell or net lease the building of which the demised premises forms a part, then in such event Landlord may, at its option, terminate this lease at any time upon ninety (90) days prior written notice to the Tenant."

The tenants remained in possession past the termination date, and failed to pay rent and/or use and occupancy thereafter, and the landlord brought the underlying holdover proceedings in March 2000. In response, the tenants interposed technical defenses, although they have never challenged the landlord's right to terminate the lease under this provision, or the landlord's good faith intent to do so.

After more than six months, on October 5, 2000, the holdover proceedings were settled by so-ordered stipulations dated October 5, 2000. These stipulations gave the landlord that which it was entitled to under the lease: possession of the premises, albeit not until December 31, 2000. Indeed, the tenants acknowledged in the stipulations that the termination notices were valid and had properly terminated the leases as of January 31, 2000; the tenants also consented to possessory judgments to the landlord to be stayed until December 31, 2000. In exchange, the tenants obtained the right to receive substantial cash payments of between $25,000 and $55,000, including a lump sum, a partial rent waiver and a partial return of the security deposit. However, these payments were made "subject to . . . compliance with the terms and conditions herein . . . [and] on condition that [the tenant] vacates . . . by no later than the Vacate Date."

The stipulation included the provision that "Time shall be of the essence with respect to all of Respondent's obligations under this Stipulation including, without limitation, Respondent's obligation to vacate the Premises pursuant to the terms hereof."

Further, it provided that

> "In the event Respondent (a) fails to timely vacate the Premises in accordance with the provisions of this Stipulation or otherwise, or (b) obtains a stay of vacating on or before the Vacate Date from any court for any reason whatsoever, then, in addition to any other remedies to which Petitioner is or may

be entitled, (i) Petitioner shall have no obligation to pay, and Respondent shall be deemed to forfeit all right to receive the Payment and the Deposit . . . ."

In addition, each respondent tenant specifically waived its "right to appeal, challenge, vacate or dispute the Possessory Judgment entered . . . pursuant to this Stipulation" and agreed that it would not take any appeal nor make any application or motion of any kind whatsoever directed to the stipulation or any of its terms.

Also, importantly, the stipulation contained the following "de minimis" clause:

"The acceptance by Petitioner of partial performance of any of the terms and conditions of this Stipulation shall not constitute an agreement, express or otherwise, to modify, change or alter the Stipulation or constitute a waiver by or estoppel against Petitioner to insist upon full and complete performance of the terms of the Stipulation as written. By illustration and not by way of limitation, no partial payment no matter how substantial, *nor any delay in vacating the Premises, shall be deemed to be substantial compliance*, i.e. *no* shortage of payment or *delay in vacating the Premises shall be considered to be de minimis*." (Emphasis added.)

The foregoing terms of the stipulation made crystal clear the consequences of a delay in vacating the premises: time was of the essence, no delay would be considered de minimis, and a failure to vacate exactly as the stipulation required would result in the complete elimination of the landlord's obligation to make the cash payment provided for by the stipulation.

Yet, on the agreed-upon vacate date to effect surrender of the premises in exchange for the payment, the landlord found that the four store premises had not been left "broom clean" as required by the leases. Instead, garbage bags, refuse and shelving had not been removed. Indeed, the submissions of the respondent tenants on this motion indicate that to complete the cleanup of that which was left behind, the landlord would need to rent a dumpster and obtain the services of two laborers for approximately five or six hours.

The following day the landlord formally notified the tenants that it would not make the payments provided for by the stipulation because the premises had not been delivered "broom clean" on the vacate date.

The tenants moved to compel payment by the landlord pursuant to the stipulations, contending that the failure to remove the garbage was de minimis, making it inequitable to permit the withholding of the payment.

The Civil Court denied the tenants' applications. It concluded that the tenants had unquestionably breached the "[t]ime shall be of the essence" clause of the stipulation and the "broom clean" provision of the lease, and that their claim that the breaches were de minimis was expressly barred by the stipulation.

Appellate Term reversed and granted the applications to enforce the stipulations, holding, based upon its own review of the record, that there was no delay in the tenants' vacating, and the landlord had made no independent showing of the condition of the premises, but had merely adopted the tenants' reference to "garbage bags/refuse" and treated it as a concession that the stipulation had been violated. Appellate Term stated that it was refusing to effect a forfeiture of the right to payment based upon a trivial or technical breach, which could have been remedied for a nominal sum, and in light of the impending demolition of the building.

## Discussion

Appellate Term improperly relieved these commercial tenants of the effect of their negotiated stipulations, which clearly required strict compliance as a condition for their receiving payment.

The terms of the stipulation are clear and the parties were entitled to chart their own course by entering into it (*see e.g. Mill Rock Plaza Assoc. v Lively*, 224 AD2d 301 [1996]). Stipulations have long been a favored means of resolving disputes absent an affront to public policy (*see Matter of Stravinsky*, 4 AD3d 75, 80 [2003]). The stipulation under consideration here is a lengthy and detailed document, resulting from extensive negotiation. It includes provisions advantageous to both sides. Included among those provisions are strict requirements as to the vacate date, in particular, that the failure to timely vacate would forfeit the right to payment; indeed, it specified that no delay in vacating would be considered to be de minimis. The Court of Appeals has repeatedly instructed that "courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing" (*Vermont Teddy*

*Bear Co. v 538 Madison Realty Co.*, 1 NY3d 470, 475 [2004], quoting *Reiss v Financial Performance Corp.*, 97 NY2d 195, 199 [2001]). The parties having intentionally provided that no delay in vacating would be de minimis, this Court may not ignore that provision.

The tenants do not dispute that the condition that the premises be delivered "broom clean" is incorporated into their stipulation. Therefore, the only issue is whether the condition in which the tenants left the premises amounted to a real violation of the "broom clean" provision so as to constitute a late vacatur of the premises.

In *Akron Meats v 1418 Kitchens* (160 AD2d 242 [1990], *lv denied* 76 NY2d 704 [1990]), the commercial tenant claimed entitlement under the lease to payment by the landlord on account of the premature cancellation of the lease by the landlord; the landlord had withheld the cancellation fee because the tenant left the premises with exposed wiring and holes in the floor caused by the removal of trade fixtures, and in a general state of disrepair. This Court held that the tenant was not entitled to the cancellation payment because it had defaulted under the lease provisions requiring the tenant to repair any damage caused by removal of fixtures, and to leave the premises in good repair (*id.* at 244-245).

While the cases before us do not involve as severe a state of disrepair as that considered in *Akron Meats*, it is undisputed that the tenants left behind garbage bags, refuse and shelving. Moreover, while exact quantities and qualities of these items are not established, the fact that it would concededly have cost thousands of dollars and required hours of labor to clear it away establishes that this circumstance involves far more than a trash bag or two needing to be brought to the curb.

Under these circumstances, the tenants cannot be heard to argue that the items left behind amounted to a de minimis violation, too minor to justify the complete elimination of their right to payment. Simply put, the landlord was not given fully vacant and broom clean premises on the promised date, nor could this result have been achieved by some minimal effort. The materials left behind unquestionably created a violation of the provision that they vacate the premises by the specified date and the incorporated provision that they leave the premises in broom clean condition when doing so. If we were to ignore this violation as too minor to justify the severe result, we would in effect be ignoring the stipulation's explicit provision that no delay in vacating would be considered de minimis.

We note that while the tenants emphasize what they view as the equities of this situation, they have offered no excuse for their noncompliance with the provision of the stipulation incorporating the lease's "broom clean" clause. Rather, they simply characterize the landlord's actions as an attempt to "have its cake and eat it too" by recovering possession of these valuable leaseholds while at the same time avoiding the obligation to pay the settlement monies due, which they term the "Surrender Stipend."

Although at first glance the result here may seem harsh, particularly if the failure to leave the premises broom clean is characterized as de minimis, upon closer examination the equities are not so weighted in the tenants' favor. First of all, we must bear in mind that under the terms of the leases, the landlord was completely entitled to terminate the tenancies as it did, and there is no longer any dispute that the landlord properly proceeded with the termination under the lease. Yet, the tenants were able to strategically utilize the legal system in order to hold off their ouster for a full year, in the process wresting from the landlord the promise of a cash payment if they agreed to do that which they were contractually bound to do 12 months earlier, namely, vacate the premises. Notwithstanding the tenants' references to the loss of their valuable leaseholds, and the concomitant implication that they were entitled to be compensated for the requirement that they vacate before the lease term had ended, the cash payments they negotiated bore no relation to any rights under the leases. Rather, the payments were a concession they obtained in exchange for their agreement to vacate by an absolute date certain, with time of the essence, where no delay in vacating the premises would be considered to be de minimis. These tenants were entitled to these payments only if they vacated, properly, by the specified vacate date.

The tenants acknowledge that incorporated in the stipulation's requirement that they vacate the premises was the lease's requirement that they leave the premises in broom clean condition. Yet, they take the position that by vacating the premises, albeit while leaving behind a quantity of trash, they sufficiently satisfied their obligations under the stipulation, implying that the difference between the condition in which they left the premises and a broom clean condition was negligible.

The problem with their position is two-fold. First, the contractual provisions making time of the essence and specify-

ing that no delay in vacating the premises would be considered to be de minimis, amounted to the equivalent of a "hell or high-water clause" by which a contractual provision is made absolute and unconditional. Such clauses have been held to be enforceable (*see Wells Fargo Bank Minn. N.A. v Nassau Broadcasting Partners, L.P.*, 2002 WL 31050850, 2002 US Dist LEXIS 17191 [SD NY, Sept. 13, 2002]), and the "de minimis" clause here is similarly enforceable. Even if the refuse left behind by the tenants had been limited to eight bags of trash that the landlord could have dragged out to the curb, the landlord had the absolute right, obtained in the negotiation process, to conclude that the tenants' purported vacating of the premises was incomplete, and in consequence to decline to make the payments under the stipulation.

Second, as a practical matter, the debris left behind was of a quantity that did not qualify as de minimis. Counsel for respondent tenants indicated that to complete the cleanup of that which was left behind, the landlord would need to rent a dumpster and obtain the services of two laborers for approximately five or six hours. By that description alone, it is established that even though the tenants themselves were out of the premises, it would actually be a matter of days, at least, before the premises were actually in the condition they should have been upon their surrender to the landlord.

The parties having conditioned the tenants' right to the contemplated payments on the landlord's absolute right to obtain possession of the premises, broom clean, on the vacate date, their failure to so deliver possession undermines the tenants' claims to sympathy or the consideration of equity. Their references to hardworking families do not suffice; nor do claims of fiscal hardship (*see City of New York v 130/40 Essex St. Dev. Corp.*, 302 AD2d 292, 294 [2003]; *Fifty States Mgt. Corp. v Pioneer Auto Parks*, 46 NY2d 573, 579 [1979]). In a situation completely of their own making, they are the victims of a strict stipulation provision they agreed to in order to obtain the advantage of another provision favorable to themselves.

If the insertion in the stipulation of the provisions requiring strict compliance with the requirement to vacate the premises turned out to be harsh, it was nevertheless an important, negotiated term of the agreement, and as such, must be enforced (*see Chock 336 B'way Operating v Comanche Props.*, 163 AD2d 36, 39 [1990], *lv denied* 77 NY2d 802 [1991]).

For all these reasons, the cases the tenants cite concerning forfeitures and unconscionable penalties are similarly inapplic-

able. Indeed, in *Fifty States Mgt. Corp. v Pioneer Auto Parks* (46 NY2d 573 [1979]), relied upon by Appellate Term for the proposition that equity disfavors a substantial forfeiture occasioned by a trivial or technical defect, the Court denied equitable relief in an action involving the acceleration of the rent in a 20-year lease after a default in only the fourth month, explaining that acceleration was not a forfeiture.

Here, as in *Fifty States Mgt.*, the loss of the contemplated cash payment is not a "forfeiture" as that term is used in the phrase "the law abhors a forfeiture" (*see Mooney v Byrne*, 163 NY 86, 92 [1900]). It is merely the contracted-for financial consequence of the tenants' own failure to do that which they promised to do.

By leaving the garbage behind, the tenants failed to effectively and completely vacate the premises, thereby rendering them out of compliance with the strict vacate date, and as a consequence, they lost their right to receive the cash payments contemplated by the stipulations.

Finally, the landlord's failure to affirmatively and independently establish the condition of the premises did not form a proper basis for granting the tenants' motions, as Appellate Term appears to have concluded. Inasmuch as the tenants had conceded that they left the premises with garbage, refuse and shelving, the landlord was entitled to rely on the lack of any factual dispute on this issue.

Accordingly, the four orders of the Appellate Term of the Supreme Court, First Department, entered June 24, 2002, which reversed four orders of the Civil Court, New York County (Debra A. James, J.), entered April 26, 2001, should be reversed, on the law, without costs, and the motions to enforce the stipulations denied.

MAZZARELLI, J. (dissenting). I would affirm each of the orders appealed for the reasons stated by the Appellate Term. That court adopted identical reasoning to reverse the Civil Court orders in each of the four actions, and to enforce each of the stipulations of settlement. The Appellate Term's analysis is persuasive. It stated:

> "Landlord exercised its option to prematurely terminate tenant's lease of commercial space based upon the contemplated demolition of the building premises. In the ensuing holdover proceeding, the parties executed a stipulation of settlement, so-

ordered by the court, wherein tenant consented to entry of a final judgment and landlord agreed to a payout provided tenant vacated by a stipulated date. It was further provided that 'time shall be of the essence' with respect to tenant's obligations under the stipulation, and that any delay in vacating the premises shall not be considered to be *de minimis*.

"On the stipulated vacate date (which was extended by mutual agreement for two days), after a walk-through at the premises the parties disagreed over the condition of the space, apparently because of the presence of certain 'garbage bags/refuse and shelving' at the site. Ultimately, landlord withheld the stipulated payment and, upon tenant's motion to enforce the stipulation, Civil Court denied relief on the ground that the tenant had failed to surrender the premises 'broom clean, in good order and condition' in compliance with the lease.

"We disagree. Our review of the record satisfies us that there was no delay in tenant's vacatur, and landlord made no factual showing of the condition of the premises apart from adopting tenant's own reference to 'garbage bags/refuse' as a 'concession' that the stipulation had been violated. Stipulations of settlement are essentially contracts and will be construed in accordance with contract principles (see, *Serna v. Pergament Distributors, Inc.*, 182 AD2d 985, 986 [*lv dismissed* 80 NY2d 893]). A substantial forfeiture occasioned by a trivial or technical breach is disfavored (see, *Fifty States Management Corp. v. Pioneer Auto Parks, Inc.*, 46 NY2d 573). It is obvious that the items in dispute could have been expeditiously removed for a nominal sum. Particularly in light of the circumstances that the premises were not going to be re-rented, but were scheduled for demolition, a forfeiture of the negotiated payout because of the scant remains cannot be sustained. *Akron Meats, Inc. v. 1418 Kitchens, Inc.* (160 AD2d 242 [*lv denied* 76 NY2d 704]), relied upon below, is distinguishable on its facts since the vacating tenant left the premises in a damaged state, including 'siz[e]able holes and exposed wires' cause by the removal of heavy equipment." (*1029 Sixth, LLC v Guity Fashion Corp.*, 2002 NY Slip Op 50250[U], *2-3.)

ANDRIAS and FRIEDMAN, JJ., concur with SAXE, J.; NARDELLI, J.P., and MAZZARELLI, J., dissent in a separate opinion by MAZZARELLI, J.

Orders of the Appellate Term of the Supreme Court, First Department, entered June 24, 2002, reversed, on the law, without costs, and the motions to enforce the stipulations denied.