**Shustik v 303 W. 116 St. LLC**

2025 NY Slip Op 32468(U)

July 14, 2025

Supreme Court, New York County

Docket Number: Index No. 656695/2021

Judge: Emily Morales-Minerva

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

[* 1]

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | | | |
|---|---|---|---|
| PRESENT: | **HON. EMILY MORALES-MINERVA** | PART | **42M** |
| | *Justice* | | |

-------------------------------------------------------------------X

SHAI SHUSTIK,

Plaintiff,

- v -

303 WEST 116 ST. LLC,

Defendant.

-------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 656695/2021 |
| MOTION DATE | 11/09/2024 |
| MOTION SEQ. NO. | 003 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 003) 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 156, 157, 158, 159, 160, 162, 163, 164, 165, 166, 167, 168, 169, 182, 183, 184, 185

were read on this motion to/for          JUDGMENT - SUMMARY          .

APPEARANCES:

> Sylvor & Richman LLP, New York, NY (Boris Sorin, Esq., of counsel), for plaintiff.
>
> Kucker Marino Winiarsky & Bittens, LLP, New York, NY (Nicholas G. Yokos, Esq., of counsel), for defendant.

EMILY MORALES-MINERVA, J.S.C.

Plaintiff SHAI SHUSTICK (buyer) commenced this action against defendant 303 WEST 116 ST. LLC (seller) for specific performance of a contract for the sale of real property. Among other things, seller answered and asserted counterclaims. Now, by notice of motion (sequence no. 003), seller moves for an order (1) granting seller partial summary judgment on the amended counterclaim for breach of contract, (2) cancelling the notice of pendency in this action, and (3) awarding seller

sanctions against buyer for frivolous conduct (see CPLR § 3025; CPLR § 3215; 22 NYCRR § 130-1.1).[1]

Buyer opposes the motion and cross-moves, by notice of motion (sequence number unassigned), for leave to amend its complaint, pursuant to CPLR § 3025, and for an order extending the notice of pendency, pursuant to CPLR § 6513. Seller submits opposition to the cross-motion.

For the reasons set forth below, the court (1) grants seller's motion (seq. no. 004), in part, denying only seller's application for sanctions against buyer; and (2) denies seller's cross-motion as moot.

BACKGROUND

Defendant 303 WEST 116 ST. LLC is the owner and landlord of a residential building known as 303 West 116th Street, New York, New York (premises). On August 30, 2021, defendant, as seller, and plaintiff SHAI SHUSTIK, as buyer, executed a contract of sale for the real property wherein buyer agreed to pay seller

---

[1] During oral argument on the subject motion, buyer, appearing by counsel, consented, on record, to the Court granting seller's application to amend its counterclaims pursuant to CPLR § 3025 (c); the Court granted, therefore, granted seller permission to amend the same (see NYSCEF Doc. No. 185, Transcript of Oral Argument, p 6, lines 6-14; see also CPLR § 3025 [c] [providing that "the court may permit pleadings to be amended before or after judgment to conform them to the evidence, upon such terms as may be just including the granting of costs and continuances"]). The counterclaims, are therefore, deemed amended.

$2,750,000.00 in exchange for the premises (see New York State Court System Electronic Filing System [NYSCEF] Doc. No. 002, Complaint; see also NYSCEF Doc. No. 20, Contract of Sale, dated August 30, 2021).

Pursuant to the contract, on the date of signing, buyer deposited a requisite $275,000.00 downpayment into escrow (escrow) (see Doc. No. 002, Complaint; see also NYSCEF Doc. No. 20, Contract of Sale). The contract scheduled the closing to take place at the office of seller's counsel 45 days from August 30, 2021 (Thursday, October 14, 2021) "time being of essence" (see NYSCEF Doc. No. 20, Contract of Sale, ¶ 15).[2] The contract also provided, if buyer -- "at least seven (7) days before the date scheduled for closing" -- "shall [have] furnish[ed] seller's attorney with any objections or exceptions to title," buyer retained "the right to cancel the contract if [seller did not clear] all title objections [and to] be refunded the downpayment" (emphasis added)(NYSCEF Doc. No. 20, Contract of Sale, with document entitled "Additional 'Subject To' Provisions" attached, at ¶ R3).[3]

---

[2] Paragraph 15 provides, "Closing date and Place. 'Closing shall take place at the office of Seller's Attorney at 2 PM o'clock on **40 days from date from Purchaser's attorney receipt of the fully executed contract and 5 days thereafter time being of the essence'**" (emphasis in original)(id., at ¶ 15).
[3] Paragraph R3 provides, "NOTICE OF EXCEPTIONS: Purchaser, at least seven (7) days before the date scheduled for closing, shall furnish seller's attorney with any objections or exceptions to title, which may have been returned by the title company or anyone examining title to the premises, and if it appears from such objections or exceptions that time will be required within which to remove the same, then, and in the event, seller shall have a

[* 3]

Pending the closing, on or about September 20, 2021, buyer conducted a title report search of the real property. The search revealed the property had "open minor alterations/permits showing on the N.Y.C. Building Information System (BIS)" (see NYSCEF Doc. No. 001, Complaint, Ex. B, Title Report, dated September 13, 2021). Thereafter, buyer conducted a second title search, which revealed three open building permits with the New York City Department of Buildings (DOB), and one pending permit application (see NYSCEF Doc. No. 001, Complaint, Ex. C, Title Report with Permit Search, dated November 10, 2021).

Upon buyer sharing such results with seller, seller referenced the parties' written agreement concerning removal of violations (see NYSCEF Doc. No. 20, Contract of Sale, with document entitled "Additional 'Subject To' Provisions" attached, at ¶ R13). The subject contract provides -- if the real property was subject to violation by "any county, city, or federal agency or department" -- buyer is prohibited from such violation(s) as "an objection to title" <u>unless</u> seller fails "to deposit with seller's counsel or buyer's title company, a sum

---

reasonable adjournment not more than forty (40) days within which to clear such objections or exceptions. Seller shall not be required to bring any action or proceeding or incur any expense to clear title. Purchaser has the right to cancel the contract if all title objections are not cleared by Seller, and shall be refunded the downpayment" (<u>id</u>., at ¶ R3).

[* 4]

sufficient to . . . to remove such violation of record within ninety (90) days from the date of closing of title" (id.).[4]

However -- if the estimated costs to removal of said violations(s) were, in the sole opinion of seller more than $500.00 -- seller could refuse to make such repairs; in that event, seller would have the option of either (1) accepting $500.00 from buyer and taking title of the real property without any abatement or (2) rejecting title (id.). If buyer exercised its right to reject title under such circumstances, seller would then return buyer's downpayment without further obligation (id.).

Relying on this provision, seller declined to resolve the open work permits and pending work permit, offering buyer $500.00 (see NYSCEF Doc. No. 22, Email Exchange between counsel, dated November 19, 2021; see also NYSCEF Doc. No. 002, Complaint). Seller also informed buyer that, if "[buyer]

---

[4] Paragraph R13 provides, "COST OF REMOVAL OF VIOLATIONS: Violations in any county, city, or federal agency or department which the seller is required to remove hereunder, shall not be an objection to title, provided seller shall deposit with his attorney or with the purchaser's title company, a sum sufficient to perform the work and provide the materials necessary to remove such violation of record within ninety (90) days from the date of closing of title . . . Seller reserves the right to refuse to make such a deposit should the estimated cost of such repairs in the sol[e] opinion of the seller exceed the sum of $500.00 in which event the purchaser may take title to the premises subject to said violations without any abatement in the purchase price, and receive an allowance of $500.00 or reject title. If title is rejected by purchaser, the sole obligation of the seller shall be limited to the return of the deposit made by purchaser under this contract, together with the net cost of the title deposit made by purchaser under this contract, together with the net cost of the title search and of a survey, if made" (id., at ¶ R13).

exercises his right not to accept this condition, the seller will return his downpayment and the contract shall become cancelled" (NYSCEF Doc. No. 22, Email Exchange between counsel, dated November 19, 2021).

However, buyer both refused the $500.00 and the cancelling of the contract, including the return of the deposit. Buyer requested to no avail that seller retain the downpayment and close the open permits (NYSCEF Doc. No. 23, Letter, dated November 21, 2021). Thereafter, the closing date came and went without the parties completing the sale.

Then, on November 24, 2021, buyer commenced the instant action against seller, seeking only specific performance of the contract of sale (see NYSCEF Doc. No. 002, Complaint). Buyer also filed notice of pendency with the New York County Clerk (see NYSCEF Doc. No. 003, Notice of Pendency, dated November 23, 2021).

Seller answered, asserting counterclaims for (1) breach of contract against buyer and for (2) a declaration that the contract is null and void, and (3) seeking damages in the amount of buyer's downpayment, $275,000.00 (see NYSCEF Doc. No. 006, Answer with Counterclaims). Seller reasons that buyer's failure to close on October 14, 2021, without making any objections, in accordance with the contract, constituted a default, as seller was ready, willing, and able to close. Therefore, seller

[* 6]

argues, pursuant to the express language of the contract, it is entitled to retain buyer's deposit on the sale.

Seller then moved, by notice of motion (seq. no. 001), for an order of summary judgment against buyer (see NYSCEF Doc. No. 10, Seller's Motion for Summary Judgment). Buyer submitted opposition, and cross-moved (no sequence number assigned) for an order of summary judgment against seller, granting buyer specific performance of the sale (see NYSCEF Doc. No. 27, Buyer's Notice of Cross-Motion and in Opposition to Motion).

The court (N. Bannon, J.S.C.) denied both the motion and cross-motion as premature without prejudice (see NYSCEF Doc. No. 73, Decision and Order, dated February 18, 2024). Thereafter, the parties engaged in discovery.

In the meanwhile, the open permits resolved, and seller essentially offered buyer a new closing date of June 11, 2024, time is of essence (see NYSCEF Doc. No. 93, Open Permit Search, dated April 04, 2024 [confirming that "there are no open permits found on file in the Building Department"] and Doc. No. 93, Time is of the Essence closing letter, dated April 11, 2024).

It is unclear if buyer responded directly to seller. However, on April 25, 2024, buyer filed a motion, by order to show cause (seq. no. 003), for an order staying the time is of the essence closing (see NYSCEF Doc. No. 81, Buyer's Proposed Order to Show Cause, declined to sign, dated April 30, 2024).

[* 7]

This court declined to sign such order, as buyer showed neither an emergency nor authority upon which it was entitled to the relief sought (id.).

Prior to the new closing date, on May 23, 2024, buyer's counsel inspected the subject real property and observed furniture in Unit #2 of the premises (see NYSCEF Doc. No. 114, Affidavit of Buyer's Counsel). On that same day, buyer objected to the same, expressing concern that Unit #2 "appeared to be occupied" (id.).

However, seller resided in "Unit #2" and attributed the furniture to seller's family members, contending the entire premises would be delivered in the condition required, pursuant to the contract (see id.). In this regard, the contract was clear:

> "At closing, Seller shall deliver the Premises in broom clean condition, vacant and free of leases or tenancies, together with keys to all Units within the Premises, except with respect to the following:
>
> "Residential Unit #4, Monthly Rent $2,650.00, Month-to-Month Lease;
>
> "Retail Tenant Lolo's Restaurant, Monthly Rent $5,300.00, 3/1/2021 – 2/28/2022
>
> "Lolo's restaurant has one option to renew the lease for an additional 5-year term"

(emphasis added) (NYSCEF Doc. No. 20, Contract of Sale, with First Amendment to Contract of Sale attached [providing,

[* 8]

"Paragraph R8 of the Seller's Rider shall be deleted and replaced with the [aforementioned] language"]; see also id., with document entitled "Additional 'Subject To' Provisions" attached, at ¶ R8).[5]

Thereafter, seller and buyer stipulated to a <u>final</u> extension of the time is of the essence closing date to July 09, 2024, at 10:00 A.M. (<u>see</u> NYSCEF Doc. No. 84, Stipulation to Extend Time is of the Essence Closing, dated June 04, 2024). Therein, buyer "expressly agree[d]," among other things, that (1) he received notice of the time is of essence closing date, that (2) he "waive[d] any objections" thereto; that (3) "there shall be no further extensions of the closing of July 09, 2024, at 10:00 AM; that (4) said new closing date "shall be a **TIME IS OF THE ESSENCE** date;" and that (5) "<u>no</u> further notice for the New Closing Date shall be required beyond this Stipulation" (emphasis in original)(<u>id.</u>). [6]

---

[5] Paragraph R8 provides, "DELIVERY OF POSSESSION: Seller agrees to deliver the premises broom clean and vacant at time of closing, except one tenant" (<u>id.</u>).

[6] "WHEREAS, by Residential Contract of Sale dated August 30, 2021 ('Contract'), 303 WEST 116th ST. LLC ('Seller') agreed to sell SHAI SHUSTIK ('Buyer') 303 West 116th Street NY, NY 1–26 (Block 1943, Lot 128) ('Premises'); and

"WHEREAS, by notice dated April 11, 2024 ('Notice'), Seller [303 WEST 116th ST. LLC] noticed a time is of the essence closing with respect to the Premises to be held on June 11, 2024 at 10:00 a.m. at the offices of Seller's [303 WEST 116th ST. LLC] counsel ('Closing'); and

"WHEREAS, by e-mail dated June 4, 2024, SHAI SHUSTIK ('Buyer') counsel wrote to Seller's [303 WEST 116th ST. LLC] counsel requesting that the Time is of the Essence Closing be delayed; and

[* 9]

A month later and only five days prior to the time-is-of-essence closing date, buyer requested a walkthrough of the real property to take place on July 05, 2024, at 2:00 P.M. (see NYSCEF Doc. No. 97, Email Exchange between counsel). Seller agreed to the walkthrough (see NYSCEF Doc. No. 89, Seller's Statement of Undisputed Material Facts). On that date, counsel for both parties attended, in person, on behalf of their clients, but buyer did not appear in person (see id.; see also NYSCEF Doc. No. 134, Buyer's Response to Statement of Material Facts). The walkthrough concluded without buyer registered any objections.

Two days before the scheduled closing, seller asked buyer for 48 hours after the closing to remove personal property from Unit #2 (NYSCEF Doc. No. 119, Email Exchange between counsel, dated July 07, 2024). Buyer rejected seller's request but then sought "to adjourn the closing" for purposes of performing an

---

"NOW, THEREFORE, for the mutual covenants and agreements hereinafter set forth and other good and valuable consideration, the receipt of which is hereby acknowledged by and between the Seller [303 WEST 116th ST. LLC] and Buyer [SHAI SHUSTIK]: "1. The foregoing recitals are hereby fully incorporated herein by reference . . . "3. In consideration for Seller's [303 WEST 116th ST. LLC] agreement to this Stipulation to extend that Closing from June 11, 2024 to **July 9, 2024 at 10:00 Am ("NEW TOE Closing")**, Buyer [SHAI SHUSTIK] hereby expressly agrees to the following:
"(i) that buyer [SHAI SHUSTIK] has received the Notice and waives any objections thereto; **and**
(ii) there shall be no further extensions of the Closing beyond the New TOE Closing date, **and**
(iii) the New TOE Closing shall be a **TIME IS OF THE ESSENCE** date, **and**
(iv) no further notice for the New Closing Date shall be required beyond this Stipulation" (emphasis in original).

in-person "walk-through and close" (see NYSCEF Doc. No. 98 and 100, Email Exchanges between counsel, both dated July 08, 2024). Seller rejected any further adjournment of the closing (see id.).

Having been denied extra time to remove personal belongings from Unit #2, on the same date, seller e-mailed buyer photographs of Unit #2, appearing emptied of such items (see NYSCEF Doc. No. 98, Email Exchange between counsel with photographs attached, dated July 08, 2024). However, buyer insisted on a final walkthrough, and the parties agreed to schedule it for July 09, 2024, at 9:15 AM (see NYSCEF Doc. No. 100, Email Exchange between counsel, dated July 08, 2024). In making such agreement, seller reminded buyer that the time-is-of-essence closing was scheduled to take place immediately thereafter at the office of seller's counsel at 10:00AM (id.).

Once again, at the time of the walk through, buyer did not appear in person. Instead, buyer's counsel Brian A. Campbell, Esq. (not of record), and buyer's friend non-party Claudia Rodriguez conducted the walk through on buyer's behalf (see NYSCEF Doc. No. 130, Affirmation of Claudia Rodriguez; see also NYSCEF Doc. No. 87, Affirmation of Brian A Campbell, Esq.). Buyer's friend observed three mattresses in the hallway outside of Unit #2 and leftovers in said unit's refrigerator (see NYSCEF Doc. No. 130, Affirmation of Claudia Rodriguez [emphasis

[* 11]

added] [stating, "[a]lthough Unit #2 was free of furniture, there were three mattresses in the hallway right outside of the apartment [] and there was fresh leftovers in the refrigerator"]). Buyer's counsel objected to the same, and left the premises (see NYSCEF Doc. No. 87, Affirmation of Brian A Campbell, Esq.).

Buyer then objected to those items through an e-mail exchange, having not been present at both the walkthrough and the closing. Responding in the same format, at 10:18 A.M, seller e-mailed buyer: "the mattresses you objected to in the hallway are being removed now. The miscellaneous items like qtips you objected to are being removed now" (NYSCEF Doc. No. 122, Email Exchange, dated July 09, 2024). Buyer did not immediately respond to this e-mail and neither buyer nor his counsel appeared at the office of seller's counsel for the closing (see NYSCEF Doc. No. 91, Transcript of Closing [indicated the closing commenced at 10:22 A.M. and the only appearances were as follows: Robert R. Moore, Esq., seller's counsel; Nicholas G. Yokos, Esq., seller's counsel; and Richard Sorrentino, Title Closer]).

Instead, at 11:15 A.M., buyer e-mailed seller as follows: ". . . purchaser is ready, willing, and able to close and will close on Monday July 15, 2024, at your NYC office at noon. The purchaser will be present at the building at 10:00 a.m. on the

same day to do a final walk-thru of all the units" (NYSCEF Doc. No. 102, Email Exchange between counsel, dated July 09, 2024).[7] Seller took a default on the record at 11:30 A.M., informing buyer of the same (see NYCEF Doc. No. 91, Time is of the Essence Closing Transcript).

Seller then sent buyer written notice of seller's termination of the contract (see NYSCEF Doc. No. 103, Notice of Termination, dated July 11, 2024).

As these events occurred during the pendency of this action, seller now moves (mot. seq. no. 003) for (1) an order granting it leave to amend its counterclaims to conform them to the evidence; for (2) an order granting it summary judgment on said counterclaims; for (3) an order cancelling the November 23, 2021 notice of pendency, dated November 23, 2021; and for (4) an order awarding seller sanctions against buyer for buyer's frivolous (see NYSCEF Doc. No. 85, Seller's Notice of Motion; see CPLR § 3025 (c)[governing amendments to pleadings to conform them to the evidence]; CPLR § 3212 [governing summary judgment]; and 22 NYCRR § 130-1.1 [governing sanctions]).

As to the amendment of its counterclaims, seller requests permission to amend its counterclaims to allege that buyer's

---

[7] The email provides, "Hi Robert and Nicholas, The purchaser is ready, will and able to close and will close on Monday, July 15, 2024 at your NYC office at noon. The purchaser will be present at the building at 10:00 a.m. on the same day to do a final walk-thru of all the units. I will be present there as well. Regards, Boris Sorin, Esq." (id.).

failure to close on July 09, 2024, the final time is of the essence closing date, despite seller's resolution of the open permits, constitutes a breach of contract as the parties stipulated to extend the original closing date of October 14, 2023 (see NYSCEF Doc. No. 111, Seller's Memorandum of Law in Support of Motion to Conform the Pleadings and for Summary Judgment).

Further, seller argues that, upon amendment of its counterclaims, it is entitled to summary judgment because it is undisputed that buyer failed to close on July 09, 2024, defaulting pursuant to the contract (see id.). Further, seller contends that it removed all personal items inside Unit #2 before the closing, and that the three mattresses in the hallway, leftovers in the refrigerator, and Q-tips in the bathroom were not a basis for buyer's default (see id.).

In support of its motion for summary judgment, among other things, seller submits the affirmation of Nicholas Yokos, Esq., seller's counsel (NYSCEF Doc. No. 86); affirmation of Brian A. Campbell, Esq., who personally appeared at the May 23, 2024 and July 09, 2024 walkthroughs (NYSCEF Doc. No. 87); affirmation of Theresa Matias, Managing Member of seller (NYSCEF Doc. No. 88); stipulation to extend time is of the essence closing, dated June 04, 2024 (NYSCEF Doc. Nos. 84 and 90); time is of the essence closing transcript (NYSCEF Doc. No. 91); time is of the essence

[* 14]

closing letter, dated April 11, 2024 (NYSCEF Doc. No. 93); email exchange regarding May 23, 2024 walkthrough (NYSCEF Doc. No. 95); email exchange regarding July 05, 2024 walkthrough (NYSCEF Doc. No. 97); email exchanges regarding Unit #2, with photographs attached (NYSCEF Doc. Nos. 98-101); email exchange modifying the closing date to July 15, 2024 (NYSCEF Doc. No. 102); Notice of Termination of contract, dated July 11, 2024 (NYSCEF Doc. No. 103); and contract of sale, with attachments (NYSCEF Doc. No. 110).

Buyer submits written opposition, and cross-moves for an order (1), pursuant to CPLR § 3025 (b), granting him leave to amend his complaint to add a new cause of action for breach of contract; and (2), pursuant to CPLR § 6513, extending the notice of pendency for an additional three-year period.

Buyer essentially contends that only seller breached the contract of sale, and that no prejudice exists in permitting him to amend the complaint to add this claim. As to why he did not previously assert this claim, buyer contends it was on the date of the closing -- July 09, 2024 -- when he first discovered that seller was "concealing" an impermissible tenant in Unit 2 (see NYSCEF Doc. No. 157, Buyer's Memorandum of Law, p 9). Given this alleged concealment -- which buyer contends is evidenced by the presence of three mattresses in the hallway, and loose Q-tips and empty hangers in Unit No. 2 -- buyer contends seller was not

[* 15]

ready, willing, and able to transfer title at closing, pursuant to the contract (see id.).

In support of its contentions, buyer submits, among other things, the affirmation of Boris Sorin, Esq., buyer's counsel (NYSCEF Doc. No. 114); the Contract with attachments (NYSCEF Doc. No. 115); e-mail exchange regarding seller's request for post-closing item removal, dated July 07, 2024 (NYSCEF Doc. No. 119); e-mail exchanges regarding Unit #2, with photographs (NYSCEF Doc. Nos. 120-22); e-mail exchange regarding buyer's proof of funds for closing, dated July 10, 2024 (NYSCEF Doc. No. 123); e-mail exchange regarding modification of time is of the essence closing date (Doc. Nos. 124-125); e-mail exchange regarding buyer's rejection of July 09, 2024 closing date (NYSCEF Doc. No. 126); buyer's letter to seller rejecting seller's Notice of Termination, dated July 15, 2024 (NYSCEF Doc. No. 127); proposed amended complaint (NYSCEF Doc. No. 128); buyer's affirmation (NYSCEF Doc. No. 129); and the affirmation of non-party Claudia Rodriguez, who was present at the walkthrough of July 09, 2024.

Seller submits written opposition to buyer's cross-motion.

This Court heard oral arguments on September 10, 2024, in Part 42, 111 Centre Street, Room 574, New York, New York 10013; counsel for both parties appeared and argued extensively in support of their respective positions (see NYSCEF Doc. No. 185,

[* 16]

Transcript of September 10, 2024, Oral Argument). The parties ordered the transcript of the oral argument, submitting such to the Court on April 14, 2025 (see id.).[8]

ANALYSIS

*Seller's Motion for Summary Judgment*

Summary judgment is an extraordinary remedy and is only appropriate where the movant has established that there is no question of fact on any issue which would require a trial (see Andre v Pomeroy, 35 NY2d 361, 364 [1974]; see also Bronx-Lebanon Hosp. Ctr. v Mount Eden Ctr., 161 AD2d 480 [1st Dept 1990]). The court may grant summary judgment upon a prima facie showing of entitlement to judgment as a matter of law, through admissible evidence sufficient to eliminate material issues of fact (CPLR § 3212[b]; Nomura Asset Capital Corp. v Cadwalader, Wickersham & Taft LLP, 26 NY3d 40, 49 [2015]; Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; Winegrad v New York Univ. Med. Ctr., 64 NY2d 851 [1985]). It is black letter law that such

---

[8] While the parties and the court awaited the transcripts, buyer moved, by order to show cause (mot. seq. no. 004), for a temporary extension of the Notice of Pendency, pending the outcome of the instant motion (seq. no. 003). This Court granted said interim relief (see NYSCEF Doc. No. 173, Order to Show Cause, with Interim Relief granted, dated November 22, 2024).

proof shall include the "affidavit" of a person having personal knowledge of the facts, "a copy of the pleadings" and "other available proof, such as depositions and written admissions" (CPLR § 3212 [b]).

The court must view the facts in the light most favorable to the non-movant, giving it the benefit of all reasonable inferences (see De Lourdes Torres v Jones, 26 NY3d 742 [2016]). If the moving party makes the requisite showing, the non-moving party then has the burden "'to establish the existence of material issues of fact which require a trial of the action'" (id. at 763, citing Vega v Restani Constr. Corp., 18 NY3d 499, 503 [2012], quoting Alvarez, 68 NY2d at 324).

"The elements of a cause of action to recover damages for breach of contract are the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of its contractual obligations, and damages resulting from the breach" (Rayham v Multiplan, Inc., 153 AD3d 865, 867 [2d Dept 2017], citing Tudor Ins. Co. v Unithree Inv. Corp., 137 AD3d 1259, 1260 [2d Dept 2016]; PFM Packaging Mach. Corp. v ZMY Food Packing, Inc., 131 AD3d 1029, 1030 [2d Dept 2015]). Further, a contract is to be construed in accordance with the parties' intent, generally discerned from the four corners of the document itself. "Consequently, a written agreement that is complete, clear and unambiguous on its face

[* 18]

must be enforced according to the plain meaning of its terms" (Rayham, supra [quotations omitted]).

"When 'time of the essence' is expressly stated [in a contract], the parties are obligated to strictly comply with the terms of the contract" (Champion v Blue Water Advisors, Inc., 82 AD3d 568, 568 [1st Dept 2011], citing Milad v Marcisak, 307 AD2d 281, 282 [2d Dept 2003]). When said provision is "included in a real estate contract, [as here] each party must tender performance on the [time is of the essence] day unless the time for performance is extended by mutual agreement" (emphasis added) (Milad, 307 AD2d at 281-282, citing Grace v Nappa, 46 NY2d 560, 565 [1979]).

"Failure to perform on the date specified, a material element of the contract, constitute[s] a default" (Mosdos Oraysa, Inc. v Sausto, 13 AD3d 838, 840 [3d Dept 2004], citing Grace, 46 NY2d at 566; see also 115-117 Nassau St., LLC v Nassau Beekman, LLC, 74 AD3d 537 [1st Dept 2010]). "The fact that [a party to a contract] claims it was ready and willing to close a day or two after the 'law day' is immaterial" where it was not ready on the time-of-essence date" (Champion, 82 AD3d at 568, citing Spiegel v Kessler, 216 AD2d 239, 241 [1st Dept 1995]).

"[W]here a seller seeks to hold a purchaser in breach of contract, the seller must establish that he was ready, willing, and able to perform on the time-of-the-essence closing date, and

that the purchaser failed to demonstrate a lawful excuse for its failure to close" (<u>Donerail Corp. N.V. v 405 Park LLC</u>, 100 AD3d 131, 138 [1st Dept 2012], <u>citing</u> <u>Diplomat Props., L.P. v Komar Five Assoc., LLC</u>, 72 AD3d 596, 600 [1st Dept 2010], <u>lv denied</u> 15 NY3d 706 [2010]).

Here, seller meets its prima facie burden. There is no dispute that the parties agreed to a time-is-of-essence closing date on their contract for sale of real property: July 09, 2024, at 10:00 A.M., at the office of seller's counsel. Further, seller submits proof that it was -- in accordance with the terms of the parties' contract -- ready, willing and able to transfer title to buyer in accordance with their written agreement (<u>see</u> NYSCEF Doc. No. 20, Contract [expressly stating that closing shall be time is of the essence], NYSCEF Doc. No. 84, Stipulation to extend time is of the essence closing [expressly stating that July 09, 2024 closing date is time is of the essence], NYSCEF Doc. No. 91, Closing Transcript [confirming possession of deed, ACRIS forms, title policy, and clear title other than buyer's signature]; <u>see also</u> NYSCEF Doc. No. 185, Oral Argument Transcript, p 24 [buyer conceding "clear title"]; NYSCEF Doc. No. 93, Open Permit Search, dated April 04, 2024 [confirming that "there are no open permits found on file in the Building Department"]).

[* 20]

Seller also establishes that buyer failed to appear at the closing at 10:00 A.M. or thereafter on July 09, 2024 (see Doc. No. 91, Transcript of Closing [confirming buyer's failure to appear]). Indeed, it is undisputed that buyer's counsel e-mailed seller, <u>after 11:00 A.M., on July 09, 2024</u>, requesting that the closing be extended to July 15, 2024 when buyer would be "present at the building . . . to do a walk-thru of all units" (<u>see</u> NYSCEF Doc. No. 102, Email Exchange between counsel, dated July 09, 2024; <u>see</u> <u>also</u> <u>Seaman v Schulte Roth & Zabel, LLP</u>, 176 AD3d 538, 539 [1st Dept 2019] ["[E]-mails may be considered as documentary evidence if those papers are 'essentially undeniable'"]).

Finally, seller submits prima facie proof that buyer had no lawful excuse for its failure to close. Three bare mattresses in a hallway of the building, and undescribed food in a refrigerator in a single unit of the subject building, consisting of five residential units and a retail unit on the ground floor, does not constitute material breaches of the contract and were immediately curable (<u>Mosdos Oraysa, Inc. v Sausto</u>, 13 AD3d 838, 840 [3d Dept 2004] ["Failure to perform on the date specified, a material element of the contract, constitute[s] a default"], <u>citing</u> <u>Grace</u>, 46 NY2d at 566; <u>see</u> <u>also</u> 115-117 Nassau St., 74 AD3d at 537; <u>see</u> 1029 Sixth v Riniv Corp., 9 AD3d 142, 147 [1st Dept 2004] [describing "broom clean"

[* 21]

as there being only "a trash bag or two needing to be brought to the curb", and not "garbage bags, refuse, and shelving which [would have] cost thousands of dollars and required hours of labor to clear away"]). Buyer's own proof indicates that "Unit #2 was free of furniture" (NYSCEF Doc. No. 130, Affirmation of Claudia Rodriguez, providing that "although Unit #2 was free of furniture, there were three [bare] mattresses in the hallway right outside of the apartment [] and there was fresh leftovers in the refrigerator").

Regarding damages, seller also established prima facie entitlement to retain buyer's downpayment. It is undisputed the parties' agreement explicitly provides that, upon buyer's default, "the deposit paid . . . upon execution of the agreement shall be retained by seller as liquidated damages" (NYSCEF Doc. No. 20, Contract of Sale, with document entitled "Additional 'Subject To' Provisions" attached, at ¶ R6);[9] see also Westreich v Bosler, 106 AD3d 569, 570 [1st Dept 2013] [holding that "because this was a time-of-the-essence closing, plaintiffs defaulted by failing to appear, and defendant [] was entitled to

_____

[9] Paragraph R6 provides, "PURCHASER'S DEFAULT: If the seller is ready, willing and able to convey marketable title in accordance with the provisions of this agreement and the purchaser is unable or unwilling to complete the purchase and take title, the parties agree that damages are difficult to determine and so as to avoid dispute and uncertainty, damages are hereby fixed as the amount paid by the purchaser upon execution of this contract. In the event of purchaser's willful default, the deposit paid by the purchaser upon execution of this agreement shall be retained by seller as liquidated damages" (emphasis added).

keep the down payment"], citing Palmiotto v Mark, 145 AD2d 549, 550 [2d Dept 1988]). Further, it is undisputed that such down payment is $275,000.00 (see NYSCEF Doc. No. 134, Buyer's Response to Statement of Material Facts, noting that it is undisputed that buyer deposited $275,000.00 as a downpayment following execution of the contract).

In response to seller's prima facie showing, buyer fails "'to establish the existence of material issues of fact which require a trial of the action'" (Vega v Restani Constr. Corp., 18 NY3d 499, 503 [2012], quoting Alvarez, 68 NY2d at 324). Buyer's claim that he would be ready, willing, and able to close six days after the time is of the essence closing date is immaterial (see Champion, 82 AD3d at 568, citing Spiegel, 216 AD2d at 241). Further, there is no dispute that the parties did not come to a mutual agreement to extend the closing date of July 09, 2024, which the parties' stipulated was final (see NYSCEF Doc. No. 84, Stipulation to Extend Time is of the Essence Closing, dated June 04, 2024)

Additionally, buyer submits no factual support upon which the court could find an issue of fact exists as to buyer having a lawful excuse for its failure to close. Buyer's argument -- that there was an "impermissible tenant" residing in the building (see NYSCEF Doc. No. 133, Buyer's Memorandum of Law in Opposition, p 9; see also NYSCEF Doc. No. 114, Affirmation of

[* 23]

Boris Sorin, Esq.) -- is a conclusory suspicion, which is insufficient to defeat summary judgment (see Alvarez, 68 NY2d at 325 [holding that mere conclusions and unsubstantiated allegations are insufficient to defeat summary judgment]). "A conclusory affidavit or an affidavit by an individual without personal knowledge of the facts does not establish the proponent's prima facie burden" (Saunders v J.P.Z. Realty, LLC, 175 AD3d 1163, 1164 [1st Dept 2019], citing Vermette v Kenworth Truck Co., 68 NY2d 714 [1986]).

In any event -- even if seller was "in breach of the contract on the day of the closing because the [entire building was] not vacant [-- of three mattresses in the hallway and food in a single refrigerator --], this alleged defect was curable within a reasonable time and thus the buye[r was] obligated to tender performance and permit the seller[] the opportunity to cure" (emphasis added)(Hegner v Reed, 2 AD3d 683, 685 [2d Dept 2003][where "[o]n the morning of the closing, the buyers appeared at the house to conduct a walk-through inspection and discovered that the premises were not in 'broom clean' or vacant condition"]; cf. Dambroso v Malik, 12 Misc3d 1192[A] [Civ Ct Queens Cnty 2006][determining that evidence established that defendant breached contract where defendant admitted that he was unable to convey the property in "broom clean and vacant" condition in accordance with the contract, nor could he cure,

[* 24]

because tenants, who had been in possession of the premises for a long period of time, were ill and could not vacate the premises] [emphasis added]).

However, here, buyer simply failed to appear for the time-is-of-the-essence closing (see Sherman v Real Source Charities, Inc., 41 AD3d 946, 948 [holding that "[s]ince the contract expressly provides that time is of the essence, defendant's failure to timely tender performance placed it in default and, contrary to defendant's assertions, equitable considerations will not excuse that default"] [internal citations omitted]).

Having determined that seller has established an unrebutted prima facie showing entitlement to summary judgment on its counterclaim for breach of contract, the Court next addresses seller's request for sanctions against buyer.

*Sanctions*

Seller's application for sanctions, pursuant to 22 NYCRR § 130-1.1, is denied. Section 130-1.1 provides, as relevant here:

> "(a) The court, in its discretion, may award to any party or attorney in any civil action or proceeding before the court, except where prohibited by law, costs in the form of reimbursement for actual expenses reasonably incurred and reasonable attorney's fees,

resulting from frivolous conduct as defined in this Part.

"(b) The court, as appropriate, may make such award of costs or impose such financial sanctions against either an attorney or a party to the litigation or against both.

"(c) For purposes of this Part, conduct is frivolous if: (1) it is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law; (2) it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another; or(3) it asserts material factual statements that are false."

Seller's bare assertions of buyer's frivolous conduct are insufficient to justify an award of sanctions (see Weir v Montefiore Med. Ctr., 208 AD3d 1122, 1142 [1st Dept 2022] [finding that the request for sanctions was properly denied, as plaintiff failed to identify frivolous conduct, merely making assertions in a conclusory fashion]).

*Buyer's Cross-Motion to Amend the Complaint*

Leave to amend a pleading should be freely given absent a showing of substantial prejudice or surprise, unless the proposed amendment is palpably insufficient or patently devoid of merit (see CPLR § 3025 [b]; JP Morgan Chase Bank, N.A. v Low Cost Bearings N.Y., Inc., 107 AD3d 643, 644 [1st Dept 2013]).

[* 26]

"On a motion for leave to amend, plaintiff need not establish the merit of its proposed new allegations, but simply show that the proffered amendment is not palpably insufficient or clearly devoid of merit" (MBIA Ins. Corp. v Greystone & Co., Inc., 74 AD3d 499, 500 [1st Dept 2010][internal citation omitted]).

Further, the party seeking to amend is "not required to support its allegations with evidence or an affidavit of merit" (St. Nicholas W. 126 L.P. v Republic Inv. Co., LLC, 193 AD3d 488, 488-489 [1st Dept 2021]; see also Sorge v Gona Realty, LLC, 188 AD3d 474, 475 [1st Dept 2020]). Courts have repeatedly emphasized this liberal standard (see Cherebin v Empress Ambulance Serv., Inc., 43 AD3d 364, 365 [1st Dept 2007][affirming that leave should be granted unless there is prejudice); see also NYAHSA Servs., Inc., Self-Ins. Tr. v People Care Inc., 156 AD3d 99, 103 [3d Dept 2017][holding that "leave to amend pleadings should be freely granted" where there is no showing of unfair surprise or legal futility]).

Applying these principles here, buyer's application to amend his complaint is granted. The proposed amendments are not palpably insufficient, and seller has failed to demonstrate prejudice. Therefore, the proposed amended complaint annexed to buyer's cross-motion is deemed served on seller but dismissed in accordance with this court granting summary judgment to seller.

Finally, notice of Pendency, dated November 23, 2021, is cancelled (see Guberman v Rudder, 85 AD3d 683, 684 [1st Dept 2011] ["the notice of pendency could not be maintained in the absence of a valid claim"]).

Accordingly, it is hereby

ORDERED that motion (seq. no. 003) of defendant 303 WEST 116 ST. LLC is granted, in part, to the extent that it seeks an order granting it summary judgment on its counterclaims for breach of contract and for a declaration that the subject contract is null and void; it is further

ORDERED that defendant's motion (seq. no. 003) is otherwise denied, to the remaining extent that it seeks sanctions against plaintiff SHAI SUSTIK; it is further

ORDERED that escrowee (put in name/entity) is directed to make payment of the down payment of $275,000.00 to defendant 303 WEST 116 ST. LLC; it is further

ORDERED that the Notice of Pendency, dated November 24, 2021, and temporarily extended by this Court on November 22, 2024, is cancelled and vacated; and it is further

ORDERED that plaintiff SHAI SHUSTIK's cross-motion to amend the complaint is granted, and the amended complaint of plaintiff SHAI SHUSTIK is dismissed.

[* 28]

THIS CONSTITUTES THE DECISION AND ORDER OF THE COURT.

07/14/2025
DATE

_Emily Morales-Minerva_
EMILY MORALES-MINERVA, J.S.C.

| CHECK ONE: | [X] CASE DISPOSED | [ ] NON-FINAL DISPOSITION | |
|---|---|---|---|
| | [X] GRANTED  [ ] DENIED | [ ] GRANTED IN PART | [ ] OTHER |
| APPLICATION: | [ ] SETTLE ORDER | [ ] SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | [ ] INCLUDES TRANSFER/REASSIGN | [ ] FIDUCIARY APPOINTMENT | [ ] REFERENCE |

[* 29]